J-A14017-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
   :   PENNSYLVANIA
   :
v.   :
   :
   :
   :
THOMAS AUGUST RABOIN,   :
   :
Appellant.   :   No. 976 WDA 2018

Appeal from the Judgment of Sentence Entered, June 11, 2018,
in the Court of Common Pleas of Allegheny County,
Criminal Division at No(s):  CP-02-CR-0009844-2017.

BEFORE:  OTT, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY KUNSELMAN, J.:     **FILED AUGUST 29, 2019**

Thomas August Raboin appeals from the judgment of sentence imposed following his conviction of involuntary deviate sexual intercourse with a child, unlawful contact with a minor, indecent assault person less than 13 years of age, endangering the welfare of a child, corruption of minors, and indecent exposure.[1]  We affirm.

In January of 2011, Raboin began dating K-L.B. and moved in to the home that she shared with her three minor daughters.  Raboin, K-L.B., and her three daughters later moved to a home in Verona, Pennsylvania.  Raboin, whom the children referred to as "Uncle Tommy," lived with the family for

---

[1] **See** 18 Pa.C.S.A. §§ 3123(b), 6318(a)(1), 3126(a)(7), 4304(a)(1), 6301(a)(1), and 3127(a).

three years.  A.W., K-L.B.'s eldest daughter, was in kindergarten when Raboin first moved in with the family, and in second grade when he moved out.  On occasion, K-L.B. would leave the children in Raboin's care.  During several of these occasions, Raboin summoned A.W. to the bathroom and molested her in the shower.  Raboin's relationship with K-L.B. ended in the spring of 2014, and he moved out of the residence.

In 2017, A.W. told K-L.B. that she had been sexually abused by Raboin.  K-L.B. immediately contacted the police.  A.W. thereafter underwent a forensic interview where she described the abuse.  The forensic interview was videotaped.  Detective Dale Canofari watched the forensic interview from behind a one-way mirror.  Based on the information A.W. provided in the forensic interview, Detective Canofari prepared a police report, and sought an arrest warrant.  Raboin was arrested and charged with the above-described offenses.

The matter proceeded to a jury trial.  The trial court summarized the relevant trial testimony as follows:

> Following a competency hearing, in which the eleven-year-old victim in this case, A.W., was deemed to be competent, she testified that [Raboin] molested her.  A.W. testified that in kindergarten through second grade she lived with her mother, sisters, and [Raboin], who was her mother's boyfriend at the time.  [Raboin] would watch her when her mother had to go to work or school.  She testified that [Raboin] would get in the shower and tell her to get in with him.  Once inside the shower, "he would sit in the back and I would stand in front of him and he would lick my private."  She said this happened more than one time.  She said that she complied with him "because he was much taller and he had once pushed my mother."  She testified that when she said

- 2 -

"her privates" she meant her vagina. She also testified that [Raboin] made her [sit on his lap and] "hold his private and push up and down." She testified that his private part was his penis. After she pushed up and down for a while, clear stuff would start coming out. She tried to pull away at times, but [Raboin] would grab on to her and pull her back in. [Raboin] told her several times not to tell anyone. She testified that she was afraid that Appellant would hurt her if she talked. Ultimately, she told her mother, [K-L.B.], about what [Raboin] had done when her mother tried to check her for ticks.

Next, [K-L.B.], testified that she began dating [Raboin] in 2011 and [Raboin] moved in shortly thereafter. The two parted ways in 2014 when A.W. was in third grade. In the beginning of the relationship, [Raboin] would cook, help bathe the children, put them to bed, and drive them to and from school. After a while, [K-L.B.] observed that [Raboin] favored [A].W. and didn't want much to do with the other two. In one instance, [Raboin] told the other two children that they were too dirty to touch him. [K-L.B.] further testified that on July 1, 2017, following a family reunion where the children had been playing in the woods all day, she noticed that everyone had ticks on them. She thoroughly checked each of her children for additional ticks. [K-L.B.] testified that A.W. became adamant that [K-L.B.] not undress her. [K-L.B.] asked A.W. if something had happened to her that she did not want her own mother to check her for ticks, and A.W. "looked down and away and said no very quietly." [K-L.B.] asked if A.W. was sure, and A.W. asked if her sisters needed to be in the room for this conversation. Once alone with her mother, A.W. said that "Tommy in Verona" took her into the shower with him and licked her "down there." After A.W. disclosed, [K.L.B.] called 911 and reported it to the police. At the time of the disclosure, [K-L.B.] had no contact with [Raboin,] and was dating a different individual.

[Raboin] testified that he was never alone with the kids. He testified that several other people lived in the home and that one of them would usually be home to manage the children's needs. In the spring of 2014, he left the residence due to the weight of his parenting responsibilities and other stressors within the relationship. [Raboin] denied that A.W. was ever in the shower with him and further denied performing any sexual acts on A.W.

Trial Court Opinion, 11/14/18, at 3-4 (some formatting altered).

At trial, defense counsel questioned A.W. and Detective Canofari regarding the statements A.W. made during the forensic interview. During the rebuttal phase of the Commonwealth's case, the trial court permitted the video of the forensic interview to be played to the jury, over a defense objection. The trial court also permitted K-L.B. to testify, over a defense objection, regarding the statements A.W. made to her when she disclosed the sexual abuse. At the conclusion of the trial, the jury convicted Raboin of all charges. On June 11, 2018, the trial court sentenced him to an aggregate prison term of fourteen to thirty-four and one-half years, followed by five years of probation. Raboin filed a post-trial motion, which the trial court denied. He thereafter filed a timely notice of appeal. Both Raboin and the trial court complied with Pa.R.A.P. 1925.

Raboin raises the following issues for our review:

1. Whether the trial court erred in permitting the video of the forensic examination of [A.W.] to be played in its entirety during the Commonwealth's rebuttal phase of the trial?

2. Whether the trial court erred in ruling that statements made by [A.W.] to her mother identifying [Raboin] as her assailant were admissible?

Appellant's brief at 4 (unnecessary capitalization omitted).

Raboin's issues implicate the trial court's authority to admit or exclude evidence. Our standard of review concerning the admissibility of evidence is well-settled:

The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed

- 4 -

on appeal only upon an abuse of that discretion. An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

**Commonwealth v. Woodard**, 129 A.3d 480, 494 (Pa. 2015).

In his first issue, Raboin contends that the trial court abused its discretion by overruling his objection to the admission of the forensic interview video during the rebuttal phase of the Commonwealth's case. The admission of rebuttal testimony is within the sound discretion of the trial court, and the appropriate scope of rebuttal evidence is defined by the evidence that it is intended to rebut. **Commonwealth v. Ballard**, 80 A.3d 380, 401-02 (Pa. 2013). Rebuttal is proper where facts discrediting the proponent's witnesses have been offered. **Id**. Additionally, Pa.R.E. 613(c) governs the use of a witness's prior consistent statement to rehabilitate, and provides as follows:

> Evidence of a witness's prior consistent statement is admissible to rehabilitate the witness's credibility if the opposing party is given an opportunity to cross-examine the witness about the statement and the statement is offered to rebut an express or implied charge of:
>
> (1)   fabrication, bias, improper influence or motive, or faulty memory and the statement was made before that which has been charged existed or arose; or
>
> (2)   having made a prior inconsistent statement, which the witness has denied or explained, and the consistent statement supports the witness's denial or explanation.

Pa.R.E. 613(c).

- 5 -

Raboin claims that the forensic interview video should not have been admitted as a prior consistent statement because the interview video did not predate A.W.'s initial accusations against him, which Raboin claims were fabricated. Raboin relies on **Commonwealth v. Bond**, 190 A.3d 664 (Pa. Super. 2018), which was decided two days after his judgment of sentence was imposed. In **Bond**, a panel of this Court addressed a similar admissibility challenge to the forensic interview video of the child-victim. The defendant, who was the boyfriend of the child's mother, claimed the child fabricated her allegations of sexual abuse because she did not like the defendant living with her family, and the child was upset about her separation from her natural father, who was incarcerated. The defendant argued that the trial court erred in admitting the forensic interview video as a prior consistent statement under Pa.R.E. 613(c) because the interview did not predate the child's alleged motive to fabricate the sexual abuse. The **Bond** Court agreed, and determined that the trial court erred in admitting the forensic interview video under Rule 613(c) because the child's statements in the interview video were not made before the alleged fabrication. **Bond**, 190 A.3d at 670.[2]

_____

[2] Here, the trial court and the Commonwealth both acknowledge that, under **Bond**, the admission of the forensic video as a prior consistent statement may have been error. However, the trial court concludes that any such error was harmless. Trial Court Opinion, 11/14/18, at 10-11. Raboin spends a considerable portion of his brief arguing that the error was not harmless. We need not address whether the admission of the video was harmless error, as we conclude, *infra*, that the video was admissible on other grounds.

Notably, Raboin does not discuss, or even acknowledge, the additional ruling by the ***Bond*** Court that, even though the forensic interview video was not admissible as a prior consistent statement under Rule 613(c), it was nevertheless admissible as a remainder of a recorded statement under Pa.R.E. 106. ***Bond***, 190 A.3d at 673. Rule 106 provides that "[i]f a party introduces all or part of a . . . recorded statement, an adverse party may require the introduction, at that time, of any other part--or any other . . . recorded statement--that in fairness ought to be considered at the same time." The ***Bond*** Court reasoned that, "[g]iven the extent to which defense counsel relied on the [i]nterview [v]ideo during her cross-examination of the victim, the prosecution was entitled to introduce [c]hild's entire account of the assault in order to provide full context." ***Id***. at 674.

Here, defense counsel thoroughly cross-examined A.W. at trial regarding the forensic interview in general, as well as specific statements she made in the interview. ***See*** N.T. Trial, 3/11/18, at 67-69, 71, 73, 79-80. Defense counsel also cross-examined Detective Canofari regarding his recollection of specific statements that A.W. made in the forensic interview, which the detective watched through a one-way mirror. ***See id***. at 158-62, 164. Defense counsel further questioned the detective regarding his police report, which he made based on A.W.'s statements in the forensic interview. ***See id***. at 160. Given that defense counsel repeatedly questioned A.W. and Detective Canofari regarding the forensic interview, and attempted to create

inconsistencies between A.W.'s trial testimony and her statements in the forensic interview, we conclude that the Commonwealth was entitled to introduce A.W.'s entire account of the assault in order to provide full context. **See Bond**, 190 A.3d at 674. Accordingly, even if the trial court abused its discretion by admitting the video of A.W.'s forensic video under rule 613(c) as a prior consistent statement, we conclude that the video was nonetheless admissible under Rule 106 as a remainder of a recorded statement. **See Commonwealth v. Fant**, 146 A.3d 1254, 1265 n.13 (Pa. 2016) (holding that "appellate courts are not limited by the specific grounds raised by the parties or invoked by the court under review, but may affirm for any valid reason appearing as of record"). Thus, no relief is due on Raboin's first issue.

In his second issue, Raboin contends that the trial court abused its discretion in overruling his objection to K-L.B.'s hearsay testimony regarding A.W.'s out-of-court statements identifying Raboin as her abuser. The Pennsylvania Rules of Evidence define hearsay as "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers into evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). "Hearsay is not admissible except as provided by [the Pennsylvania Rules of Evidence], by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Pa.R.E. 802.

The testimony in question consists of the following:

[K-L.B.]: I told her that if something had happened, she needed to tell me. I said, "If someone's done something to you, I need to know." All she said was, "Tommy in Verona."

. . . .

[The Prosecutor]: What did [A.W.] say to you about [Raboin]?

[K-L.B.]: She said, "Tommy in Verona." So I asked her what he did.

[The Prosecutor]: Tommy in Verona?

[K-L.B.]: Yes.

. . . .

[The Prosecutor]: Ms. [B.,] what does [A.W.] tell you after she answers the question "Tommy in Verona?"

[K-L.B.]: I asked her what he had done, and she said that when she would come home from school, he would not let her go to the bathroom until it was time for him to get a shower; that he would make her go in with him and clean herself up and then he would lick her down there until she felt like she had to pee and she would make him stop.

N.T. Trial, 3/9/18, at 102-03, 107.

Following defense counsel's objection, the court indicated that hearsay statements, like K-L.B.'s testimony regarding A.W.'s out-of-court disclosures, are generally admissible (1) under the Tender Years Act ("TYA"), 42 Pa.C.S.A. § 5985.1; (2) under Rule 613(c) as a prior consistent statement;[3] or (3) not

---

[3] The trial court essentially concedes that, pursuant to **Bond**, K-L.B.'s testimony regarding A.W.'s hearsays statements was not admissible as a prior consistent statement under Rule 613(c). **See** Trial Court Opinion, 11/14/18, at 9.

- 9 -

for the truth of the matter asserted, but rather to show "the circumstances under which the child disclosed and . . . what prompted mom to take the next step of calling the detective and taking her for a forensic interview and so on." N.T. Trial, 3/9/18, at 125-26; *see also id*. at 102 (where the trial court initially ruled that K-L.B.'s testimony regarding A.W.'s hearsay statements was admissible to show that a "prompt report" was made).[4]

We first address the admissibility of K-L.B.'s testimony under the TYA. In Pennsylvania, the TYA creates an exception to the hearsay rule for victims of childhood sexual abuse because of their fragile nature. *See Commonwealth v. G.D.M., Sr.*, 926 A.2d 984, 988 (Pa. Super. 2007). Pursuant to section 5985.1, the Commonwealth must provide notice of its intent to invoke the TYA, and the trial court must conduct an *in camera* hearing to determine if there is sufficient indicia of reliability to admit the out-of-court statements. *See* 42 Pa.C.S.A. § 5985.1(a)(1), (b). Courts consider various factors to determine whether the statements are reliable, including "the spontaneity of the statements, consistency in repetition, the mental state of the declarant, use of terms unexpected in children of that age and the lack of a motive to fabricate." *Commonwealth v. Walter*, 93 A.3d 442, 451 (Pa.

---

[4] While the record is somewhat unclear as to the specific basis for the trial court's admission of K-L.B.'s testimony regarding A.W.'s out-of-court statements, we may affirm for any valid reason appearing as of record. *Fant*, 146 A.3d at 1265 n.13.

- 10 -

2014) (quoting **Commonwealth v. Delbridge**, 855 A.2d 27, 34 n.8 (Pa. 2003)).

Raboin maintains that the challenged statements were not admissible under the TYA because he received no notice from the Commonwealth advising him of its intention to introduce the out-of-court statements, as required by section 5985.1(b). Appellant's Brief at 26.

The trial court acknowledges that the Commonwealth failed to provide the requisite statutory notice. The trial court additionally acknowledges that it did not conduct an *in camera* hearing, as required by section 5985.1(a)(1). However, the trial court reasons that any error in admitting the statements under the TYA was harmless because it conducted a competency hearing and found A.W.'s statements to be relevant, spontaneous, consistent, and that "the time, content, and the circumstances of the statements provided sufficient indicia of reliability." **See** Trial Court Opinion, 11/14/18, at 7; **see also id**. at 8 (where the trial court indicated that it "had no concerns with A.W.'s mental state at trial, and that she "lacked a motive to fabricate her testimony," as "[Raboin] had long removed himself from the residence").

We cannot agree with the trial court's determination that A.W.'s statements were admissible under the TYA. Even assuming *arguendo* that subsection (a)(1) of the statute was satisfied, there is no indication in the record that the Commonwealth gave Raboin statutory notice of its intent to invoke the TYA exception in advance of trial. On the contrary, the

Commonwealth conceded at trial that no notice was provided. N.T. Trial, 3/9/18, at 125. The language of subsection (b) is clear: in the event that notice is not provided, the statements "shall not be received into evidence." 42 Pa.C.S.A. § 5985.1(b); *see also Commonwealth v. Crossley*, 711 A.2d 1025, 1028 (Pa. Super. 1998) ("Since it is only by the authority of the [TYA] that this otherwise inadmissible evidence is deemed admissible, . . . a lack of notice negates the benefit § 5985.1 provides to the Commonwealth's case."). Accordingly, as no statutory notice was provided to Raboin, the TYA exception does not justify the trial court's decision to admit K-L.B.'s testimony regarding A.W.'s out-of-court statements

We next consider whether K-L.B.'s testimony regarding A.W.'s hearsay statements was admissible to explain the "course of conduct." "'Course of conduct' narratives often include out-of-court statements that are not offered for the truth of the matter asserted therein. *Commonwealth v. Dent*, 837 A.2d 571, 581 (Pa. Super. 2003). Thus, an out-of-court statement offered to explain a course of conduct is not hearsay. *Id*. at 577. Frequently, the statements are also non-essential to the prosecution's case, or the declarant testifies at trial, or the defendant opened the door to the admission of the evidence, or the admission of the statements was deemed harmless error." *Id*. at 581.

The trial court maintains that K-L.B.'s testimony regarding A.W.'s statements was "not offered for the truth of the matter asserted, but to

establish how and why the delayed report came about and the reason [K-L.B.] called the police and ultimately took her daughter for a forensic interview." **See** Trial Court Opinion, 11/14/18, at 9-10. The trial court additionally points out that it provided the jury with a limiting instruction regarding K-L.B.'s testimony, cautioning its members not to consider the hearsay statements for the truth of the matter asserted. **Id**. at 8-9. The trial court acknowledges that it incorrectly instructed the jury that it could consider the statements for the limited purpose of assessing A.W.'s credibility, and that it should have instead instructed the jury to consider the statements "to explain the subsequent course of conduct." **Id**. at 10. However, the trial court maintains that, from a juror's perspective, this distinction is de minimus. **Id**.

Here, the record reflects that, as part of Raboin's defense, he challenged A.W.'s credibility based on her three-year delay in reporting the sexual abuse. **See** N.T. Trial, 3/12/18, at 255, 257, 264. Additionally, the trial court instructed the jury that "[A.W.'s failure to complain promptly and the nature and explanation for that failure are factors bearing on the believability of her testimony and must be considered by you in light of all of the evidence in the case. **Id**. at 294-95. Given that the jury was specifically charged with evaluating the circumstances surrounding the three-year delay in reporting the abuse, we conclude that K-L.B.'s testimony regarding A.W.'s reluctance to disclose the abuse, as well as the manner in which K-L.B. coaxed A.W. into revealing the abuse, was admissible to explain the course of conduct of

K-L.B.'s prompt disclosure of the abuse upon learning about it. Indeed, defense counsel acknowledged at trial that he "knew [the Commonwealth] would have to explain why it took three years." N.T. Trial, 3/9/18, at 126.

Moreover, even if the admission K-L.B.'s testimony regarding A.W.'s hearsay statements was error, we conclude that such error was harmless. Harmless error exists if the Commonwealth proves either: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict. **Commonwealth v. Fulton**, 179 A.3d 475, 493 (Pa. 2018).

Raboin argues that the admission of K-L.B.'s testimony regarding A.W.'s hearsay statements "was not harmless as the Commonwealth utilized these statements, in conjunction with the improperly admitted forensic examination, to improperly rehabilitate A.W., but also supplement what she testified to." Appellant's Brief at 26. While Raboin acknowledges that the trial court gave the jury a limiting instruction, he argues that he is entitled to a new trial because the instruction "was insufficient to cure the error and the prejudice of the admission of this testimony of [K.L.B.]." **Id**. at 27. We disagree.

Here, K-L.B.'s testimony was merely cumulative of other untainted evidence which was substantially similar to the challenged testimony. A.W. testified at trial that she told K-L.B. that Raboin sexually abused her in the shower. **See** N.T. Trial, 3/9/18, at 49-50, 53. A.W. also repeatedly stated in her forensic interview that she told her mother that Raboin had sexually abused her when they lived in Verona.[5] Forensic Interview, 7/6/17, at 12-13, 29-30, 32. Moreover, whereas K-L.B.'s description of the abuse was brief, A.W. explained, in graphic detail, how Raboin molested her, both at trial and in her forensic interview. Thus, K-L.B's testimony was clearly cumulative of A.W.'s testimony. Finally, the trial court specifically instructed the jury that they could not consider the statements that A.W. made to K-L.B. for the truth of the matters asserted. **See See Commonwealth v. Chmiel**, 30 A.3d 1111, 1147 (Pa. 2011) ("The jury is presumed to have followed the court's instructions.") (citation omitted)). Accordingly, we conclude that any error in the admission of K-L.B.'s testimony regarding A.W.'s out-of-court statements was harmless beyond a reasonable doubt, and Raboin is not entitled to relief on this claim. **See Commonwealth v. Green**, 162 A.3d 509, 519 (Pa. Super. 2017) (*en banc*) ("Not all errors at trial . . . entitle an appellant to a new trial, and the harmless error doctrine, as adopted in Pennsylvania, reflects the

---

[5] As previously discussed, the video of the forensic interview was admissible under Rule 106.

- 15 -

reality that an accused is entitled to a fair trial, not a perfect trial." (citation omitted)).

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/29/2019