J-S24043-20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| v. | : | |
| | : | |
| CLARENCE BURBAGE, | : | |
| | : | |
| Appellant | : | No. 2957 EDA 2019 |

Appeal from the PCRA Order Entered September 26, 2019
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0001040-2012

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| v. | : | |
| | : | |
| CLARENCE BURBAGE, | : | |
| | : | |
| Appellant | : | No. 2958 EDA 2019 |

Appeal from the PCRA Order Entered September 26, 2019
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0001045-2012

BEFORE:   BENDER, P.J.E., STABILE, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:         **FILED NOVEMBER 06, 2020**

Clarence Burbage (Appellant) appeals from the September 26, 2019 order, which dismissed his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.[1] Upon review, we affirm.

---

[1] Appellant purports to appeal from an October 1, 2019 order. However, the docket indicates that the order dismissing Appellant's PCRA petition was filed September 26, 2019. We have corrected the caption accordingly.

*Retired Senior Judge assigned to the Superior Court.

Appellant's underlying convictions stem from two shootings of Danny

Williams. First, on May 22, 2011, between 1:00 and 2:00 a.m.,

> Appellant, Rakeem Divers, and co-defendant, Dyshan Aursby, attacked Jerry Holloman, also known as "Mike." Appellant, Divers, and Aursby asked Holloman where Williams was and Holloman told them that Williams was with his girlfriend, Delisha Foy, at her house. Appellant, Aursby, and Divers told Holloman to call Williams on the phone. When Holloman hesitated, Appellant took Holloman's phone and called Williams. The three gentlemen held Holloman at gunpoint as they walked to Foy's house on South 66th Street to see Williams. When they arrived at Foy's home, Holloman was told to stand at the door while Appellant, Aursby, and Divers hid. When Williams opened the door, Holloman yelled "run." Williams attempted to slam the door shut but Appellant headed inside before the door closed. Holloman ran down the alleyway across the street from Foy's home while Aursby and Divers followed Appellant into the home. As Appellant, Aursby, and Divers went into the home, Williams ran up the stairs to the second floor. Williams then jumped out of a second floor window, hit the ground, and began limping away. Aursby and Divers followed Williams [outside], Aursby drew his gun, and fired it at Williams, striking Williams in his left buttock. After Appellant, Aursby, and Divers left, Holloman found Williams laying [*sic*] on the ground and stayed with him until the police arrived[ and he] was taken to the [hospital]. That same day, Williams was interviewed [] and told [detectives] that Aursby, whom he referred to as "Sha," and Appellant, whom Williams referred to as "C Murder" shot him. Based on the identifications made by Williams and Holloman, arrest warrants were filed for Aursby and Appellant. At approximately 10:20 p.m. on May 22, 2011, [police] arrested Aursby.
>
> At approximately [3:00] a.m. on May 27, 2011, Appellant and Divers again attacked Holloman and demanded Holloman call Williams to meet him. Holloman called Williams and told him to meet him in the area of 65th Street & Greenway Avenue. When Williams arrived, he began arguing with Appellant. [A scuffle ensued, during which Williams reached under] his shirt, to appear as if he had a gun[.] Divers gave Appellant a gun and Appellant advanced towards Williams. Appellant then shot

Williams at least eight (8) times across the chest, mid-section, arms, and legs [as Williams attempted to run away].

*Commonwealth v. Burbage*, 131 A.3d 98 (Pa. Super. 2015) (unpublished memorandum at 1-2) (citation omitted; party designations and capitalization altered). Williams's cause of death was multiple gunshot wounds.

Appellant was charged at separate docket numbers for the events occurring on May 22, 2011, and May 27, 2011. Appellant proceeded to a consolidated jury trial with co-defendant Aursby on May 21-31, 2013. Appellant was found guilty of first-degree murder, aggravated assault, robbery, conspiracy, and possession of an instrument of crime.[2] On May 31, 2013, Appellant was sentenced to an aggregate term of life imprisonment without the possibility of parole. This Court affirmed Appellant's judgment of sentence, and our Supreme Court denied Appellant's petition for allowance of appeal. *Id.*, *appeal denied*, 136 A.3d 978 (Pa. 2016).

Appellant timely filed a *pro se* PCRA petition on November 8, 2016. Attorney James A. Lammendola was appointed and filed a no-merit letter and petition to withdraw pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988) and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). On October 5, 2017, the PCRA court filed notice of its intent to dismiss Appellant's PCRA petition without a hearing pursuant to Pa.R.Crim.P. 907, but did not grant Attorney Lammendola's petition to

---

[2] The jury found Aursby guilty of attempted murder, aggravated assault, robbery, and conspiracy.

- 3 -

withdraw at that time. On October 23, 2017, privately-retained counsel Lauren A. Wimmer, Esquire, sent a letter to the PCRA court, which was entitled Response to 907 Notice, requesting, *inter alia*, permission to amend Appellant's PCRA petition within 45 days. On November 9, 2017, the PCRA court dismissed Appellant's PCRA petition and granted Attorney Lammendola's petition to withdraw.

Appellant, through Attorney Wimmer, filed a notice of appeal. On appeal, he claimed, *inter alia*, that the PCRA court abused its discretion by failing to permit Attorney Wimmer to file an amended PCRA petition. This Court found the record inconclusive as to whether the PCRA court considered Appellant's motion for leave to amend. Accordingly, we remanded for the PCRA court to rule on the motion. **Commonwealth v. Burbage**, 216 A.3d 347 (Pa. Super. 2019) (unpublished memorandum).

Following remand, the PCRA court held a hearing,[3] at the conclusion of which the PCRA court granted Appellant 30 days to file an amended PCRA petition. N.T., 5/2/2019, at 18-19. Appellant filed a supplemental amended

---

[3] At the hearing, the PCRA court expressed concern as to this Court's remand directive because upon receiving Attorney Wimmer's October 23, 2017 letter, which was not a formally filed motion, the PCRA court informally granted Attorney Wimmer until November 9, 2017, to file an amended petition. When nothing was filed, the PCRA court denied Appellant's petition. N.T., 5/2/2019, at 4-8. **See also** PCRA Court Opinion, 9/26/2019, at 2 n.3 ("At the time of the dismissal, [newly-retained Attorney Wimmer] had failed to formally file her 907 response or request to amend the *pro se* petition. On October 17, 2018, the docket was amended, without th[e PCRA] court's knowledge, to reflect that counsel sent her 907 response to th[e PCRA] court on October 23, 2017.") (unnecessary capitalization omitted).

PCRA petition, raising four claims: (1) after-discovered evidence of Detective James Pitts' habitually coercive conduct towards witnesses in custodial interrogations; (2) ineffective assistance of trial counsel for failing to request a justification jury instruction; (3) ineffective assistance of appellate counsel for failing to argue on direct appeal that the trial court erred in admitting Holloman's statement that "Murder killed Danny[;]" and (4) ineffective assistance of trial counsel for failing to request a jury instruction that prior consistent statements could not be used as substantive evidence. Supplemental Amended PCRA Petition, 5/31/2019, at 2, 6, 9, 11. The Commonwealth filed a motion to dismiss. Once again, the PCRA court issued notice of its intent to dismiss Appellant's PCRA petition. Notice of Intent to Dismiss, 8/22/2019. Appellant filed a response, and on September 26, 2019, the PCRA court dismissed Appellant's PCRA petition.

This timely filed notice of appeal followed.[4] On appeal, Appellant presents the following issues for our review.

1. Whether the PCRA court erred in denying Appellant's after-discovered evidence claim of Detective [] Pitts' misconduct during the investigation of the instant matter.

2. Whether trial counsel was ineffective for failing to request a justification charge.

3. Whether appellate counsel was ineffective for failing to argue on direct appeal that the trial court erred in admitting, over

---

[4] Appellant was not ordered to file a Pa.R.A.P. 1925(b) statement, and none was filed. The PCRA court submitted its September 26, 2019 opinion and order dismissing Appellant's PCRA petition in compliance with Rule 1925(a).

trial counsel's objection, [] Holloman's statement to [] Foy that "Murder killed Danny."

Appellant's Brief at 3 (numbering system altered; PCRA court answers omitted).

We begin with our standard of review.

This Court analyzes PCRA appeals in the light most favorable to the prevailing party at the PCRA level. Our review is limited to the findings of the PCRA court and the evidence of record and we do not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. Similarly, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary. Finally, we may affirm a PCRA court's decision on any grounds if the record supports it.

*Commonwealth v. Benner*, 147 A.3d 915, 919 (Pa. Super. 2016) (quoting

*Commonwealth v. Perry*, 128 A.3d 1285, 1289 (Pa. Super. 2015)).

It is well settled that there is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary. To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

*Commonwealth v. Maddrey*, 205 A.3d 323, 328 (Pa. Super. 2019)

(citations, original brackets, and quotations marks omitted).

Appellant first argues that the PCRA court erred in dismissing his after-discovered evidence claim regarding Detective Pitts' allegedly habitual use of

aggressive interrogation techniques to coerce false witness statements in homicide trials. Appellant's Brief at 11. To warrant relief on a claim of after-discovered evidence, a petitioner must prove four distinct elements.

> [T]his four-part test requires the petitioner to demonstrate the new evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted. The test applies with full force to claims arising under [subs]ection 9543(a)(2)(vi) of the PCRA. In addition, we have held the proposed new evidence must be producible and admissible.

***Commonwealth v. Small***, 189 A.3d 961, 972 (Pa. 2018) (citations omitted).

By way of background, Detective Pitts was assigned to investigate the shooting death of Williams. On June 13, 2011, homicide detectives interviewed Divers at the homicide office. Although Detective Pitts did not participate in the interview, Divers testified at trial that Detective Pitts assaulted and coerced him into giving a statement that implicated Appellant. N.T., 5/23/2013, at 48-56; N.T., 5/24/2013, at 27-30. At trial, the Commonwealth confronted Divers with the contents of that statement, which he claimed were lies, and subsequently admitted the statement into evidence without objection. N.T., 5/23/2013, at 54-97; N.T., 5/24/2013, at 150-51. Detective Pitts testified that he spoke briefly with Divers on June 13, 2011, but denied assaulting or threatening him. N.T., 5/24/2013, at 32-35. Thereafter, on November 4, 2013, The Philadelphia Inquirer published an

article on their website, "philly.com," about the aggressive interrogation techniques employed by Detective Pitts in three other homicide trials. ***See id.*** at 4. According to Appellant,

> Divers' trial testimony bears striking resemblance to the accounts of [the witnesses in the three homicide trials referenced by the articles, as well as others who have come forward since, who] were likewise subjected to Detective Pitts' coercive interrogation tactics. Genuine issues of material fact exist with respect to the circumstances of Divers' interrogation and, based on his trial testimony, his statement was not given under sufficiently reliable circumstances to justify its admission as substantive evidence.

***Id.*** at 5-6 (citation omitted). One of the cases Appellant relied on was that of Dwayne Thorpe, who was convicted of first-degree murder in 2009, based in part upon a witness statement allegedly obtained via coercion by Detective Pitts. Following a PCRA hearing where Thorpe presented witnesses about Detective Pitts' interrogation techniques, he was granted a new trial. ***See id.*** at 5.

Appellant sought an evidentiary hearing on his after-discovered evidence claim, during which he intended to produce testimony regarding Detective Pitts' pattern of coercive interrogation techniques, "unless the Commonwealth [wa]s willing to stipulate to the testimony from [Thorpe's] evidentiary hearing[.]" ***Id.*** at 6. Appellant also intended to call Detective Valerie Miller about a Philadelphia Police Internal Affairs Division (IAD) investigation into Appellant's case based on Detective Pitts' involvement. ***Id.***

The PCRA court dismissed this claim as being without merit. It found the news articles to be double hearsay and insufficient on their own to warrant a new trial. PCRA Court Opinion, 9/26/2019, at 5.

> In addition, [Appellant] references cases involving three defendants, Nafis Pickney, Amin Speakes, and [] Thorpe, where Pitt[s'] alleged coercion of Commonwealth witnesses resulted in acquittals for Pickney and Speakes and a new trial for Thorpe. The information referenced in these matters, [Appellant] alleges, bears a striking resemblance to Pitts' conduct during the investigation as described by [] Divers, who testified that Pitts punched him multiple times, denied him food, water, and the use of a restroom, and threatened to investigate him as a suspect for the murder unless he signed a statement implicating [Appellant].
>
> The evidence provided in the Pickney, Speakes, and Thorpe cases make no reference to the instant matter, and Pitts' conduct, as explored in those cases, does not automatically warrant a finding that Pitts engaged in similar behavior in this matter. Further, Pitts' conduct over the course of Divers' testimony was explored during the instant trial, as Divers[] testified that his statement was coerced through Pitts' verbal and physical abuse. The jury heard and considered such evidence, and ultimately convicted [Appellant] thereafter.
>
> ***
>
> [Appellant] further attempts to buttress his claim by arguing that Detective Pitts is currently subject to a[n IAD] investigation concerning the instant matter and a complaint made by [another individual regarding improper behavior to coerce a statement]. This argument is, at best, premature as [Appellant] fails to present any findings made as a result of that investigation, or demonstrate how those findings impact the outcome of this matter. The evidence with respect to each of [Appellant's] claims concerning Detective Pitts [is] insufficient to warrant a new trial.

*Id.* at 5-7 (footnote and citation omitted). Finally, the PCRA court found that even if Divers' testimony and statement were stricken from the record at a

new trial, the verdict would remain the same because Holloman's testimony was sufficient to support Appellant's convictions. ***Id.*** at 6 (citations omitted).

Upon review, we agree with the PCRA court that Appellant has not established that the introduction of evidence from Thorpe's PCRA hearing would likely result in a different verdict in Appellant's case if a new trial were granted. Even if Divers' statement and testimony were barred at a retrial based upon the statement being coerced, there was still ample testimony supporting Appellant's conviction. ***See Burbage***, 131 A.3d 98 (unpublished memorandum at 10) ("Clearly, Holloman's testimony that [A]ppellant shot the victim repeatedly at close range was sufficient to support the verdict."). Accordingly, we conclude that the PCRA court did not err in dismissing this claim.

Appellant's next two issues involve claims of ineffective assistance of trial and appellate counsel. We review these issues mindful of the following.

> The law presumes counsel has rendered effective assistance. In general, to prevail on a claim of ineffective assistance of counsel, a petitioner must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The petitioner must demonstrate: (1) the underlying claim has arguable merit; (2) counsel lacked a reasonable strategic basis for his action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. The petitioner bears the burden of proving all three prongs of the test.

*Commonwealth v. Postie*, 200 A.3d 1015, 1022-23 (Pa. Super. 2018) (*en banc*) (citations, footnote, and quotation marks omitted). "A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." *Commonwealth v. Daniels*, 963 A.2d 409, 419 (Pa. 2009).

First, Appellant claims trial counsel rendered ineffective assistance for failing to request a justification jury instruction. Appellant's Brief at 27. We review this claim mindful of the following.

> Defendants are generally entitled to instructions that they have requested and that are supported by the evidence. We have explained that the reason for this rule is that instructing the jury on legal principles that cannot rationally be applied to the facts presented at trial may confuse them and place obstacles in the path of a just verdict. A criminal defendant must, therefore, establish that the trial evidence would reasonably support a verdict based on the desired charge and may not claim entitlement to an instruction that has no basis in the evidence presented during trial.

*Commonwealth v. Charleston*, 94 A.3d 1012, 1026 (Pa. Super. 2014) (citations and quotation marks omitted).

> To prevail on a justification defense, there must be evidence that the defendant (a) ... reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (b) that the defendant was free from fault in provoking the difficulty which culminated in the slaying; and (c) that the [defendant] did not violate any duty to retreat.

*Commonwealth v. Sepulveda*, 55 A.3d 1108, 1124 (Pa. 2012) (quotation marks and citation omitted).

[T]he fact that a defense is theoretically available for a given crime does not mean that the Commonwealth must disprove justification in every case. Because justification is an affirmative defense, the defendant has the burden of asserting an appropriate offer of proof in order to be entitled to a jury instruction on justification.

*Commonwealth v. Manera*, 827 A.2d 482, 485 n.7 (Pa. Super. 2003).

According to Appellant, because the evidence presented at trial indicated that Williams pretended to have a firearm during the scuffle with Appellant on May 27, 2011, counsel was ineffective for failing to request a justification instruction. Supplemental Amended PCRA Petition, 5/61/2019, at 8. Specifically, Appellant argued there was (1) a genuine issue of material fact presented at trial as to whether Appellant shot Williams in self-defense; (2) no reasonable strategic basis for not requesting a justification instruction where Appellant did not deny being present at the shooting; and (3) a reasonable probability that the outcome of the trial would have been different if a justification instruction had been provided "because it would have negated the requisite *mens rea* for first[-]degree murder." *Id.* at 8-9.

The PCRA court dismissed this claim, explaining as follows.

Based on the evidence presented at trial, it is clear that Appellant's conduct meets none of the elements that would warrant a justification instruction. Appellant could not reasonably believe that he was in imminent danger of death or serious bodily injury, justifying the use of deadly force, as the evidence demonstrates that Williams was unarmed at the time of the shooting. Moreover, both the testimony and Appellant's own averments indicate that after Williams reached under his shirt, Appellant had time to retrieve a firearm from Divers, which [Appellant] used to shoot Williams as [Williams] was running

away. Appellant was not free from fault in provoking the incident that lead to the instant homicide, as he instigated it himself by accosting Holloman, coercing him into bringing Williams to the location of the shooting, and engaging in a fistfight with Williams. Finally, even if Appellant did reasonably believe that Williams was about to use deadly force against him, he still violated his duty to retreat upon gaining illegal possession of Divers' firearm. Trial counsel had no legal or rational basis to request such an instruction, and the claim consequently fails.

PCRA Court Opinion, 9/26/2019, at 8-9 (party designations altered).

Preliminarily, we note that Appellant's argument in his amended PCRA petition that he did not deny being at the scene of the shootings is disingenuous. Although Appellant did not present his own evidence placing him elsewhere during the shootings, counsel argued during closing argument that Appellant was in Foy's house during the May 22nd shooting and "wasn't there" during the May 27th shooting. N.T., 5/28/2013, at 57. In fact, his defense strategy was not one of self-defense, but that he did not commit the crimes charged. *See* N.T., 5/21/2013, at 47 (opening statement that Appellant did not kill Williams); N.T., 5/28/2013, at 29 (closing argument that Appellant "didn't do this"). This strategy makes sense, given our review, because a justification defense was unavailable based upon the evidence presented at trial. Appellant instigated the encounter with Williams by attempting to lure him to the area and, when Williams appeared on the street corner, trying "to strongarm him[ and j]ust [running] up on him." N.T., 5/21/2013 (afternoon session), at 50. A scuffle ensued between Williams and Appellant. When Williams pretended to have a firearm to scare

away Appellant, Appellant ran two to three feet to Divers to retrieve a firearm, and then "proceeded to charge [Williams]. … He ran towards [Williams], directly towards him with the gun out." *Id.* at 51-52. Williams attempted to run away, but was unable to do so effectively given the gunshot wound from five days prior, "and that's when [Appellant] just started shooting him and just continued to shoot him[] – six, seven, eight times." *Id.* at 52. Because Appellant did not and could not avail himself of a justification defense, counsel cannot be deemed ineffective for failing to request a justification instruction. Accordingly, the PCRA court did not err in dismissing this claim.

Finally, Appellant argues that appellate counsel rendered ineffective assistance for failing to argue on direct appeal that the trial court erred in admitting Holloman's statement to Foy that "Murder killed Danny." Appellant's Brief at 30. We review this issue mindful of the following.

> c) Witness's Prior Consistent Statement to Rehabilitate. Evidence of a witness's prior consistent statement is admissible to rehabilitate the witness's credibility if the opposing party is given an opportunity to cross-examine the witness about the statement and the statement is offered to rebut an express or implied charge of:
>
>> (1) fabrication, bias, improper influence or motive, or faulty memory and the statement was made before that which has been charged existed or arose; or
>>
>> (2) having made a prior inconsistent statement, which the witness has denied or explained, and the consistent statement supports the witness's denial or explanation.

Pa.R.E. 613(c).

> Prior consistent statements may be admitted to corroborate or rehabilitate the testimony of a witness who has been impeached, expressly or impliedly, as having a faulty memory, or as having been induced to fabricate the testimony by improper motive or influence. Admission of prior consistent statements on such grounds is a matter left to the sound discretion of the trial court, to be decided in light of the character and degree of impeachment. It is not necessary that the impeachment be direct; it may be implied, inferred, or insinuated either by cross-examination, presentation of conflicting evidence, or a combination of the two.
>
> To be admissible to rebut a charge of improper motive, [] the prior consistent statement must have been made before the motive to lie existed. A prior consistent statement, if admissible at all, is admissible only as rebuttal or rehabilitation but [not as] substantive evidence.

*Commonwealth v. Bond*, 190 A.3d 664, 667-68 (Pa. Super. 2018) (citations, quotation marks, and original brackets omitted).

By way of background, over Appellant's objection, the trial court allowed Foy to testify that Holloman and another individual, Kyree Ball, had independently told Foy that "Murder killed Danny." N.T., 5/22/2013 (afternoon session), at 42. Holloman's statement was admitted as a prior consistent statement to rehabilitate Holloman after the credibility attack on him earlier that day, and Ball's statement was admitted preemptively as rehabilitation, based on an assumption that Appellant and Aursby would attempt to discredit Ball during his scheduled testimony the following day. However, the next day Ball refused to testify and was held in contempt of

- 15 -

court, thereby denying Appellant the opportunity to cross-examine Ball regarding the statement. Trial counsel moved for a mistrial, which the trial court denied. N.T., 5/23/2013, at 9-13, 36-37. On direct appeal, appellate counsel argued that the trial court erred in denying the motion for a mistrial based upon the admission of Ball's statement. *Burbage*, 131 A.3d 98 (unpublished memorandum at 8). This Court agreed that based on these circumstances, Ball's statement should not have been admitted. *Id.* "However, we determine[d] that the trial court properly denied Appellant's motion for mistrial where [] Holloman made the identical statement[.] Appellant does not contest that Holloman's statement was admissible under Rule 613(c)." *Id.* (unpublished memorandum at 8-9) (capitalization altered; citation omitted). "Although [Appellant] raised an objection at trial, Appellant does not argue on appeal that admission of Holloman's statement was error. Therefore, Ball's statement was merely cumulative and any error was harmless." *Id.* (unpublished memorandum at 9) (capitalization altered).

In his amended PCRA petition, Appellant argued that appellate counsel should have argued on direct appeal that the admission of Holloman's statement through Foy was hearsay and inadmissible as a prior consistent statement. Supplemental Amended PCRA Petition, 5/31/2019, at 10. Appellant argued that because Foy should not have been permitted to testify regarding Holloman or Ball's identical statements, the trial court's denial of Appellant's motion for a mistrial could not have been harmless error, and

Appellant suffered "actual prejudice from the admission of both Holloman and Ball's hearsay statements through Foy." *Id.* at 11.

The PCRA court dismissed this claim, explaining as follows.

> Appellate counsel cannot be deemed ineffective for failing to challenge Foy's testimony because, as the trial court discussed with trial counsel at the time of her objection, Foy's statement was hearsay falling into the exception of prior consistent statements. On cross-examination, trial counsel and counsel for co-defendant Aurbsy relentlessly attacked Holloman's credibility, accusing him of fabricating his statement through prior *crimen falsi* convictions, his participation in the Witness Protection Program, his use of narcotics that could affect his recollection of events, and vacillation on whether Divers[] handed Appellant the murder weapon prior to the shooting. Trial counsel engaged in this line of questioning, in part, to implicate Divers as the shooter and implant reasonable doubt in the minds of the jurors, even going as far as to specifically ask whether Divers was the shooter.
>
> In light of this, it is clear that Foy's testimony concerning Holloman's prior consistent statement that Appellant shot Williams is admissible under the hearsay exception. Appellant elicited testimony that implied that Divers was the shooter, and that Holloman somehow fabricated or misremembered the sequence of events. Holloman's statement that "Murder killed Danny," as elicited through Foy's testimony, clearly shows that Holloman implicated Appellant as the shooter well before this matter went to trial. Accordingly, the trial court properly admitted this evidence, and appellate counsel had no reasonable basis to challenge its admission on direct appeal. Appellant's claim has no merit.

PCRA Court Opinion, 9/26/2019, at 10-11 (citation omitted; party designations altered).

On appeal, Appellant argues that Holloman testified in accordance with his statement to homicide detectives that Appellant shot and killed Williams,

and that the "only discrepancies in his testimony relevant to the murder (as opposed to the prior incident [on May 22, 2011]) concerned whether Appellant retrieved the gun from Divers."[5] Appellant's Brief at 32-33 (footnote and citation omitted). Appellant ignores the vigorous attacks on Holloman's credibility during cross-examination by Appellant's trial counsel regarding the May 27, 2011, shooting. Moreover, this argument glosses over counsel's focus at trial on the discrepancy about whether or not Appellant retrieved the firearm from Divers. As noted by the PCRA court, trial counsel utilized this discrepancy to argue that Divers was the shooter and Holloman was falsely accusing Appellant to cover Holloman's involvement. **See** N.T., 5/22/2013 (morning session), at 117-18; N.T., 5/28/2013 (morning session), at 33-38 (closing argument). Therefore, Holloman's prior statement to Foy that Appellant killed Williams was admissible as a prior consistent statement "to corroborate or rehabilitate the testimony of a witness who has been impeached… as having been induced to fabricate the testimony by improper motive or influence." **Bond**, 190 A.3d at 668 (citations omitted). Finally, the admission of Holloman's statement is entirely distinguishable from Ball's because Holloman was subject to cross-examination, whereas Ball was not. Accordingly, we conclude appellate

---

[5] Appellant's trial counsel confronted Holloman with his preliminary hearing testimony, wherein he had testified that on May 27, 2011, Appellant did not retrieve a firearm from Divers, but already possessed the firearm on his person. **See** N.T., 5/22/2013 (morning session), at 113-15.

counsel was not ineffective for failing to raise this claim on appeal, and the PCRA court did not err in dismissing this claim.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 11/6/20