J-S11026-18

2018 PA Super 163

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| GEORGE G. BOND | |
| Appellant | No. 374 EDA 2017 |

Appeal from the Judgment of Sentence imposed January 4, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0007801-2014

BEFORE:  OTT, STABILE, and MUSMANNO, JJ.

OPINION BY STABILE, J.:                          **FILED JUNE 13, 2018**

Appellant, George G. Bond, appeals from the January 4, 2017 judgment of sentence imposing an aggregate 27½ to 55 years for involuntary deviate sexual intercourse ("IDSI"), unlawful contact with a minor, aggravated indecent assault, and indecent assault.[1]  We affirm.

The trial court summarized the facts in its Pa.R.A.P. 1925(a) opinion.

> At trial it was established that on May 24, 2014, A.P. ["Child"], then age 10, her mother, S.P. ["Mother"] and [Mother's] boyfriend, the [Appellant] George Bond, lived on the first floor apartment of premises 1260 South 60th Street, Philadelphia. While [Mother] was at work, [Child] told [Appellant] that she was hungry.  [Child] sat on [Mother's] bed.  [Appellant] was lying on the same bed.  While [Child] was searching for restaurants on her tablet, [Appellant] started to rub her and told her to pull down her

---

[1]  18 Pa.C.S.A. §§ 3123(c), 6318(a)(1), 3125(a)(7), 3126(a)(7).

pants. She did. [Appellant] inserted his finger into her vagina, performed oral sex on her and then exposed his penis.

Later that day, [Child] approached her great aunt, ["Great Aunt"], who lived in the upstairs apartment of the building. [Child] was too embarrassed to tell [Great Aunt] what happened. Instead, she wrote a note recounting the incident. She showed the note to [Great Aunt]. [Great Aunt] and [Child] informed [Mother] about the incident by telephone. [Mother] came home and summoned the police.

[Child] was interviewed by [Michelle Kline], a forensic interview specialist with the Philadelphia Children's Alliance. A video of the interview was played to the jury.

Trial Court Opinion, 5/12/17, at 2-3.

On March 15, 2016, at the conclusion of trial, the jury found Appellant guilty of the aforementioned offenses. The trial court imposed sentence on January 4, 2017. On January 12, 2017, Appellant filed a motion for reconsideration of the sentence. The trial court denied that motion the same day. Appellant filed this timely appeal on January 19, 2017. His sole contention is that the trial court erred in permitting the jury to see a video of Child's forensic interview (the "Interview Video") with Philadelphia Children's Alliance ("PCA"). Appellant's Brief at 3.

We review the trial court's evidentiary rulings for abuse of discretion.

The admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law. Thus our standard of review is very narrow. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

- 2 -

*Commonwealth v. Lopez*, 57 A.3d 74, 81 (Pa. Super. 2012), *appeal denied*, 62 A.3d 379 (Pa. 2013). "Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Commonwealth v. Aikens*, 990 A.2d 1181, 1184-85 (Pa. Super. 2010), *appeal denied*, 4 A.3d 157 (Pa. 2010).

The trial court admitted the Interview Video as a prior consistent statement. It did so at the Commonwealth's request after defense counsel cross-examined Child extensively with regard to the substance of the interview depicted in the video. Rule 613(c) of the Pennsylvania Rules of Evidence governs this issue:

> **(c) Witness's Prior Consistent Statement to Rehabilitate.** Evidence of a witness's prior consistent statement is admissible to rehabilitate the witness's credibility if the opposing party is given an opportunity to cross-examine the witness about the statement and the statement is offered to rebut an express or implied charge of:
>
> (1) fabrication, bias, improper influence or motive, or faulty memory and the statement was made before that which has been charged existed or arose; or
>
> (2) having made a prior inconsistent statement, which the witness has denied or explained, and the consistent statement supports the witness's denial or explanation.

Pa.R.E. 613(c).

This Court has addressed Rule 613 as follows:

- 3 -

[P]rior consistent statements may be admitted to corroborate or rehabilitate the testimony of a witness who has been impeached, expressly or impliedly, as having a faulty memory, or as having been induced to fabricate the testimony by improper motive or influence. Admission of prior consistent statements on such grounds is a matter left to the sound discretion of the trial court, to be decided in light of the character and degree of impeachment. It is not necessary that the impeachment be direct; it may be implied, inferred, or insinuated either by cross-examination, presentation of conflicting evidence, or a combination of the two.

*Commonwealth v. Baker*, 963 A.2d 495, 504 (Pa. Super. 2008), *appeal denied*, 992 A.2d 885 (Pa. 2010) (quoting *Commonwealth v. Hunzer*, 868 A.2d 498, 512 (Pa. Super. 2005), *appeal denied*, 880 A.2d 1237 (Pa. 2005)). "[T]o be admissible to rebut a charge of improper motive, as is the case here, the prior consistent statement must have been made before the motive to lie existed." *Commonwealth v. Busanet*, 54 A.3d 35, 66 (Pa. 2012), *cert. denied*, 134 S. Ct. 178 (2013). A prior consistent statement, if admissible at all, is admissible only as rebuttal or rehabilitation but as not substantive evidence. *Baker*, 963 A.2d at 504.

In *Commonwealth v. Hutchinson*, 556 A.2d 370, 371 (Pa. 1989), a jury found the defendant guilty of raping and robbing two women. Upon his arrest, the defendant told police he was on his way home from his grandmother's home and had committed no crime. *Id.* The defendant alleged counsel was ineffective for failing to offer the statement into evidence as a prior consistent statement after the prosecutor impeached the credibility of defendant and his grandmother. *Id.*

- 4 -

The **Hutchinson** Court explained that prior consistent statements ordinarily are inadmissible hearsay, but in rare cases, they are admissible to rehabilitate a witness against a claim of recent fabrication or corrupt motives. **Id.** at 372. The **Hutchinson** Court stated:

> If one testifies that they did a certain thing at a given time, they may be challenged that they said something different before. Such is impeachment by a prior contradictory statement. Ordinarily, that one has always said the same thing is subsumed in their testimony and need not be buttressed by evidence of prior consistency, unless that consistency, by allegation of recent fabrication is challenged. When challenged, evidence of prior and continued consistency may be offered. Evidence of prior consistency, absent such challenge is not required and is essentially cumulative and repetitious. To regularly allow testimony of prior consistency may easily become a device to merely augment the credibility of witnesses by others.

**Hutchinson**, 556 A.2d at 372. By the foregoing standards, the **Hutchinson** Court held the defendant's statement inadmissible. The prosecution made no allegations of recent fabrication during trial, and "the statement in issue was made *after* [the defendant's] arrest: clearly not a time when the effect of the statement could not have been foreseen." **Id.**

On the other hand, in **Baker**, this Court affirmed the admission of video of a child's forensic interview because the defense insinuated that the prosecution and/or the victim's mother induced the victim to fabricate the testimony. **Baker**, 963 A.2d at 505. The video predated the alleged inducement of fabricated testimony. **Id.**

Appellant argues the trial court erred because this case involves no prior statements that predate Child's motive to fabricate. He claims Child fabricated

her allegations from the beginning because she did not like living with Mother and Appellant and was upset about her separation from her natural father, who was incarcerated. Rule 613 permits prior consistent statements, Appellant argues, only when they predate the alleged "fabrication, bias, improper influence or motive, or faulty memory." Pa.R.E. 613(c)(1). He is correct in this regard. *Busanet*, 54 A.3d at 66; *see also*, *Commonwealth v. Montalvo*, 986 A.2d 84, 96 (Pa. 2009) (holding a prior statement inadmissible where the defendant failed to establish the timing of the statement).

Child's accounts of the incident—in her note to Great Aunt, in her statement to a DHS caseworker, in the Interview Video, at the preliminary hearing, and at trial—varied slightly, with regard to whether Appellant penetrated[2] her as well as various other details. Appellant claimed that Child's allegations were fabricated from the beginning, and that the Interview Video therefore served no rehabilitative purpose. The Interview Video, Appellant argues, was just one of a series of inconsistent accounts of the assault.

The trial court cited *Hunzer* in support of its decision. There, the victim testified that the defendant assaulted her by "sticking his tongue and his finger in my private area." *Hunzer*, 868 A.2d at 506. The Commonwealth, over the

---

[2] Penetration is an element of IDSI and aggravated indecent assault. 18 Pa.C.S.A. §§ 3101, 3123(c), 3125(a)(7).

defendant's objection, elicited the victim's prior consistent statements through the testimony of a caseworker. *Id.* at 511-12. The *Hunzer* Court wrote:

> Prior consistent statements may [...] be considered specially relevant when the witness' status alone is such that his or her testimony may be called into question even in the absence of express impeachment. [...] [J]urors are likely to suspect that unimpeached testimony of child witnesses in general, and child victims of sexual assaults in particular, may be distorted by fantasy, exaggeration, suggestion, or decay of the original memory of the event. Prior consistent statements may therefore be admitted to corroborate even unimpeached testimony of child witnesses, at the trial court's discretion, because such statements were made at a time when the memory was fresher and there was less opportunity for the child witness to be effected by the decaying impact of time and suggestion.

*Id.* at 512 (quoting *Commonwealth v. Willis*, 552 A.2d 682, 691-92 (Pa. Super. 1988), *appeal denied*, 559 A.2d 527 (Pa. 1989)).

The quoted passage seems at odds with the express language of Rule 613, in that it is far more permissive of prior consistent statements, at least in the context of the sexual assault of a child. *Willis*, from which the *Hunzer* Court quoted, pre-dated the enactment of Rule 613 and the Tender Years Act, 42 Pa.C.S.A. § 5985.1[3] The *Hunzer* defendant therefore argued that the trial court erred in relying on *Willis* rather than Rule 613. The *Hunzer* Court

---

[3] The Tender Years Act authorizes admission, subject to certain conditions, of hearsay statements by a child witness describing certain enumerated offenses, including sex offenses. 42 Pa.C.S.A. § 5985.1. Statements admitted under this section are substantive evidence. *Commonwealth v. Barnett*, 50 A.3d 176, 187 (Pa. Super. 2012), *appeal denied*, 63 A.3d 772 (Pa. 2013). The Commonwealth did not rely on the Tender Years Act in this case.

concluded that the Commonwealth used prior consistent statements "to rebut an inference of recent fabrication arising during cross-examination." *Id.* at 513. Thus, the *Hunzer* Court tracked the language of Rule 613, but it did not engage in a detailed analysis of the timing of the prior consistent statement.

Instantly, the trial court quoted the portion of *Hunzer* in which that Court quoted extensively from *Willis*. We conclude the trial court erred, because its holding contravenes the express language of Rule 613, our Supreme Court's analysis of Rule 613 in *Hutchinson*, and this Court's analysis of Rule 613 in *Baker*.[4] While the Interview Video antedated Child's cross-examination at trial, it did not antedate the alleged motive to lie, which Appellant claims arose before she first complained of the assault. Put simply, Child's statements in the Interview Video were not "made before" the alleged fabrication, as Rule 613(c)(1) expressly requires. Moreover, this case does not involve a lapse in memory, another basis for admitting a prior consistent

---

[4] We are cognizant that a three-judge panel of this Court is not free to overrule the decision of a previous three-judge panel. Our result therefore does not affect the precedential value of *Hunzer*. As explained in the main text, the *Hunzer* Court found a prior consistent statement admissible because it rebutted an allegation of recent fabrication. *Hunzer* is therefore in harmony with Rule 613. *Willis*, however, is not. We conclude that the *Hunzer* Court's reliance on *Willis* is *dicta*, and that Rule 613 and the Tender Years Act have superseded *Willis*.

statement under Rule 613(c)(1).[5]  Appellant relied on the inconsistencies in Child's statements to support his claim that Child was lying.

The Commonwealth argues that Appellant, in challenging Child's credibility based on her varying accounts of the assault, has accused Child of fabricating her accounts "on an ongoing basis," and that therefore the Commonwealth was entitled to introduce the Interview Video, which was largely consistent with Child's most incriminating allegations.  Given the governing precedents discussed above, we do not believe we can construe Rule 613(c)(1) so broadly.  Under the Commonwealth's analysis, a prosecutor could, in any case where the defense probes a witness's inconsistent accounts of a crime, rely on Rule 613(c)(1) to trumpet the most incriminating version regardless of whether it antedates the alleged "fabrication, bias, improper influence or motive, or faulty memory."  Rule 613(c)(1) does not authorize that approach.

We also reject the Commonwealth's argument that the trial court's ruling is salvageable under Rule 613(c)(2), which permits admission of a prior consistent statement that supports the witness's denial of, or explanation for,

_____

[5] Defense counsel questioned Child about whether she remembered making different versions of her statement to different people, but, as explained above, the defense theory was that the many variations in Child's story were indicative of fabrication, not memory lapse.  **Cf. Commonwealth v. Swinson**, 626 A.2d 627, 632-33 (Pa. Super. 1993) (a witness's prior written statement to police was admissible where the witness's trial testimony differed from the statement).

having made a prior inconsistent statement. Pa.R.E. 613(c)(2). The Commonwealth fails to cite any place in the record where Child denied having made a prior inconsistent statement or explained the inconsistencies in her testimony. For all of the foregoing reasons, we conclude that the trial court erred in admitting the Interview Video under Rule 613(c).

Next, we consider the Commonwealth's argument that the trial court's error was harmless.

> The doctrine of harmless error is a technique of appellate review designed to advance judicial economy by obviating the necessity for a retrial where the appellate court is convinced that a trial error was harmless beyond a reasonable doubt. Its purpose is premised on the well-settled proposition that [a] defendant is entitled to a fair trial but not a perfect one.

*Commonwealth v. Allshouse*, 36 A.3d 163, 182 (Pa. 2012) (quoting *Commonwealth v. Thornton*, 431 A.2d 248, 251 (Pa. 1981)).

On this point, we turn for guidance to *Busanet*. There, the defendant alleged his appellate counsel was ineffective for failing to challenge the trial court's admission of a witness's prior consistent statement. *Busanet*, 54 A.3d at 65. The witness was the Commonwealth's "key witness," and he testified that he was with the defendant when the defendant fired a gun at the victim in retribution for a robbery. *Id.* Defense counsel examined the witness on his motive to obtain favorable treatment from the Commonwealth in his own case. *Id.* The Commonwealth introduced a prior consistent statement—the witness's written statement that he gave to police 15 days after the crime occurred. *Id.* Trial counsel objected because the witness already had a

motive to lie at that point, but the trial court overruled the objection. *Id.* at 66. Appellate counsel did not pursue the issue on direct appeal.

The Supreme Court found no ineffective assistance of counsel because the defendant failed to establish prejudice: "Nevertheless, even assuming for purposes of argument that the trial court erred by admitting [the witness's] prior statement under Pa.R.E. 613(e) [sic], we agree with the PCRA court that such a claim would not have entitled Appellant to relief on appeal[.]" *Id.* at 67. Trial counsel "meticulously cross examined [the witness] with evidence of his motive to testify favorably for the Commonwealth[.]" *Id.* "Further, on re-cross examination of [the witness], trial counsel painstakingly pointed out to the jury that when [the witness] made the prior statement, he was concerned about being charged in connection with the shooting." *Id.* The Supreme Court also noted other "overwhelming" evidence of the defendant's guilt, including other witnesses, ballistics evidence, and the defendant's own statements. *Id.* Thus, any error on the part of the trial court or counsel did not prejudice the defendant in *Busanet*.

We find *Busanet* instructive. Instantly, defense counsel cross-examined Child extensively. Defense counsel brought out testimony that Appellant penetrated Child with his fingers and tongue. N.T. Trial, 3/11/16, at 98. In particular, defense counsel cross-examined Child with a transcript of the Interview Video:

Q.     So do you remember telling Ms. Kline that what happened was that it started with him rubbing on your butt with his hand over your pants?

A.     Yes.

Q.     And that then he went inside of your pants with his hand and touched your private part?

A.     Yes.

Q.     And put his fingers inside of your private part?

A.     Yes.

Q.     What you told Ms. Kline is that he did that while your pants were still on?

A.     Yes.

Q.     And that then after he did that, that that [sic] was when he pulled out his private part.

       Do you remember telling Ms. Kline that?

A.     Yes.

Q.     And do you remember telling Ms. Kline that after he pulled out his private part is when he pulled down your pants?

A.     Yes.

Q.     And that, after he pulled down your pants, the next thing that happened was that he put his tongue down there?

A.     Yes.

Q.     And then you told Ms. Kline that, after you got up and started to walk away out of the room, he called you back into the room?

A.     I don't remember that.

Q.     You don't remember saying that?

A.     No.

Q.     Okay.  All right.  Well, you didn't tell Ms. Kline that he called you back and kissed your private part again; right?

A.     No, I don't remember.

Q.     And you told Ms. Kline – you did tell Ms. Kline that he tried to get you to touch his private part, right?

A.     I don't remember.

Q.     And do you remember telling – do you remember Ms. Kline asking you – do you remember her asking you if he tried to make you or if he made you touch his private part?

A.     No.

Q.     Okay.  Do you remember her asking you how many times he tried to make you touch his private part?

A.     No.

Q.     Do you remember telling her that he made you touch it twice?

A.     No.

Q.     Okay.  Do you remember her asking you if you saw his private part?

A.     Yes.

Q.     Okay.  And do you remember telling her that you couldn't really see it because it was so fast?

A.     Yes.

Q.     All right.  And you couldn't tell her what it looked like?

A.     Yes.

Q.     All right.  And you couldn't tell her what it looked like at all?

A.     Yes.

Q.     Yes, you can tell us?

A.     No, no.  I'm saying, yes, I couldn't tell you.

Q.     Thank you.  But do you remember telling Ms. Kline that he took his private part out before he put his tongue on your private part, not after; right?

A.     Yes.

Q.     And Ms. Kline was the first person who you told about him putting his fingers inside of your private part; correct?

A.     Yes.

Q.     You didn't tell [Great Aunt] about that part; right?

A.     No.

[***]

Q.     So you agree with me that it doesn't say in the note that he put any part of his fingers or his hand inside of your private part; right?

A     Yes.

Q.     And you didn't tell that to the police officer or to anybody at the hospital either; right?

A.     I don't remember.

Q.     Okay.  But do you agree that Ms. Kline was the first person you told that to; right?

A.     Yes.

Q.     Alright.  And when Ms. Kline was asking you about the part of this when he pulled out his private part, she also asked you if he did anything with his private part?

       Do you remember that?

A.     No.

Q.     Okay.  Do you remember telling her that he sat there and didn't do anything with it?

A.     No.

*Id.* at 108-113. In essence, defense counsel chose to cross-examine Child on all of the pertinent portions of the Interview Video transcript, and did so before the Commonwealth moved to play the Interview Video for the jury. The actual video itself was therefore cumulative and, in our view, harmless. **See Commonwealth v. Allshouse**, 36 A.3d 163, 182 (Pa. 2012) (concluding that erroneous admission of cumulative evidence was harmless), **cert. denied**, 569 U.S. 972 (2013).

In addition, the Commonwealth introduced a text message Appellant sent to Mother shortly after the assault. It said, "I'm so, so, so fucking sorry. I can't breathe." N.T. Trial, 3/14/2016, at 63. Mother also recorded two phone conversations she had with Appellant shortly after the assault, in which he made incriminating statements. *Id.* at 63-64. Appellant also asked Mother to lie to police and tell them he was teaching Child sex education. *Id.* at 69.

Appellant, in his brief, does not explain how the Interview Video prejudiced him. He notes that the jury asked for a replay of Appellant's recorded statement and the Interview Video (the trial court directed the jurors to rely on their recollections of the video). The fact remains, however, that defense counsel introduced the incriminating facts from the Kline interview during cross-examination of Child. The jury's request to see the Interview Video a second time does not change the fact that it was cumulative of evidence already in the record.

Ultimately, this case turned on Child's credibility. Appellant cannot explain how the admission of the Video Interview, though erroneous, did anything to augment or bolster Child's credibility, inasmuch as defense counsel cross-examined Child extensively on her interview with Michelle Kline. In addition, the jury heard Appellant's own damaging statements. We believe the trial court's error was harmless beyond a reasonable doubt.

Furthermore, we would conclude that the interview was admissible under Pa.R.E. 106:[6]

> If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part--or any other writing or recorded statement--that in fairness ought to be considered at the same time.
>
> *Comment:* This rule is identical to F.R.E. 106. A similar principle is expressed in Pa.R.C.P. No. 4020(a)(4), which states: "If only part of a deposition is offered in evidence by a party, any other party may require the offering party to introduce all of it which is relevant to the part introduced, and any party may introduce any other parts."
>
> The purpose of Pa.R.E. 106 is to give the adverse party an opportunity to correct a misleading impression that may be created by the use of a part of a writing or recorded statement that may be taken out of context. This rule gives the adverse party the opportunity to correct the misleading impression at the time that the evidence is introduced. The trial court has discretion to decide whether other parts, or other writings or recorded statements, ought in fairness to be considered contemporaneously with the proffered part.

---

[6] The parties did not brief Rule 106, but this Court is free to affirm the trial court on any valid basis. ***Commonwealth v. Janda***, 14 A.3d 147, 161 n.8 (Pa. Super. 2011).

Pa.R.E. 106. Thus, where a party introduces a portion of a writing or recorded statement, Rule 106 permits the adverse party to introduce the remainder so that the fact finder can consider the evidence in context. *Commonwealth v. Bryant*, 57 A.3d 191, 195 (Pa. Super. 2012); *Commonwealth v. Passmore*, 857 A.2d 697, 712 (Pa. Super. 2004), *appeal denied*, 868 A.2d 1199 (Pa. 2005). The burden is on the adverse party to explain the relevance of the remainder of the recording. *Bryant*, 57 A.3d at 196.

As explained above, defense counsel cross-examined Child extensively about the interview before the Commonwealth moved to introduce the Interview Video. The prosecutor argued:

> And the fact that [defense] counsel, during her cross, explicitly went line by line towards what she's transcribed that happened at the PCA video, more than anything, more than any other argument, that's really what makes it important for the jury to view the video. She's gone line by line.

N.T. Trial, 3/11/16, at 137. This argument, though offered in support of admitting the Interview Video under Rule 613, supports its admission under Rule 106. Further, the prosecutor limited her request to the approximately thirteen minutes during which Child discussed the alleged assault. *Id.* at 138. Given the extent to which defense counsel relied on the Interview Video during her cross-examination of the victim, the prosecution was entitled to introduce Child's entire account of the assault in order to provide full context.

For all of the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/13/18