**[J-104-2020] [MO: Mundy, J.]**

**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

COMMONWEALTH OF PENNSYLVANIA, : No. 9 WAP 2020
:
Appellee : Appeal from the Order of the
: Superior Court entered August 29,
: 2019 at No. 976 WDA 2018
v. : affirming the Judgment of Sentence
: of the Court of Common Pleas of
: Allegheny County entered June 11,
THOMAS AUGUST RABOIN, : 2018 at No. CP-02-CR-0009844-
: 2017.
Appellant :
: ARGUED: December 2, 2020

**CONCURRING AND DISSENTING OPINION**

**JUSTICE WECHT**                                    **DECIDED: SEPTEMBER 7, 2021**

I agree with the Majority that the trial court erred in admitting A.W.'s forensic interview under Rule 106. I write separately to offer an additional reason that Rule 106 does not apply here: Raboin did not "introduce" the forensic interview for purposes of the Rule.

Rule 106, the so-called rule of completeness, provides that: "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." Pa.R.E. 106. The Rule's clear language suggests that it is triggered only when a party "introduces all or part of a writing or recorded statement." The Majority concludes nevertheless that the Rule applies regardless of whether the party has formally introduced the statement as an exhibit. *See* Majority Opinion at 17 ("We disagree with Appellant that Rule 106 is only triggered when

the writing or recording is formally introduced as an exhibit."). According to the Majority, one "introduces" a statement for purposes of Rule 106 whenever he or she makes "extensive references to a written or recorded statement during the examination of a witness or multiple witnesses." *Id.* The Majority offers no legal analysis whatsoever for this holding, nor does it bother to describe how and when Raboin extensively referenced A.W.'s interview transcript.

The Majority's liberal interpretation of Rule 106 stems from *Commonwealth v. Bond*, 190 A.3d 664 (Pa. Super. 2018), a case which the Majority distinguishes elsewhere in the opinion. In *Bond,* the Superior Court held that, while a victim's forensic interview was inadmissible as a prior consistent statement, the interview video nevertheless was admissible under Rule 106. *Id.* at 674. The *Bond* court underscored that, during cross-examination, defense counsel "went line by line" through the transcript of the forensic interview. *Id.* Given defense counsel's extensive reliance upon the interview transcript, the *Bond* court concluded that the prosecution was entitled to introduce the victim's entire account of the assault in order to provide the full context of the victim's statements. *Bond*, 190 A.3d at 674 ("Given the extent to which defense counsel relied on the Interview Video during her cross-examination of the victim, the prosecution was entitled to introduce Child's entire account of the assault in order to provide full context.").

Analogizing this case to *Bond*, the panel below found that Raboin's attorney thoroughly cross-examined A.W. regarding the forensic interview generally, and even asked about specific statements that A.W. made during the interview. Defense counsel also cross-examined Detective Canofari regarding his recollection of specific statements that A.W. made in the forensic interview. Counsel further questioned Detective Canofari regarding his police report, which included details from A.W.'s forensic interview. Given that defense counsel questioned A.W. and Detective Canofari regarding the forensic

interview and attempted to create inconsistencies between A.W.'s trial testimony and her statements in the forensic interview, the Superior Court concluded that "the Commonwealth was entitled to introduce A.W.'s entire account of the assault in order to provide full context." *Commonwealth v. Raboin*, 2019 WL 4072306, at *3 (Pa. Super. 2019).

The Superior Court's holding in *Bond* arguably departs from the text of Rule 106, which applies only when "a party *introduces* all or part of a writing or recorded statement,"[1] not simply whenever counsel proceeds "line by line" to quote a transcript of the statement. Indeed, courts in some of our sister states have held that the rule of completeness applies only when a writing or recording formally has been introduced as substantive evidence.[2] Nevertheless, there is some appeal to *Bond*'s rationale. To hold otherwise effectively would allow litigants to read into the record a misleadingly excerpted portion of a statement, thus giving jurors the mistaken impression that the excerpt actually represents the entire writing or recording. Because this is the very situation that Rule 106 was intended to prevent,[3] the *Bond* Court's interpretation likely was correct.

But even if one agrees with *Bond's* liberal interpretation of the word "introduces," this case is nothing like *Bond.* Raboin's attorney did not proceed "line by line" through

---

[1]    Pa.R.E. 106 (emphasis added).

[2]    *See*, *e.g.*, *Rials v. Duckworth*, 822 So. 2d 283, 287 (Miss. 2002) ("Rule 106 does not permit the introduction of an entire document when a witness was, as here, only cross-examined by reading from a writing and no part of that document was introduced into evidence."); *State v. Bauer*, 598 N.W.2d 352, 368 (Minn. 1999) ("Minn. R. Evid. 106 is not applicable unless portions of the actual recording have been introduced into evidence.").

[3]    *See* Pa.R.E. 106, cmt. ("The purpose of Pa.R.E. 106 is to give the adverse party an opportunity to correct a misleading impression that may be created by the use of a part of a writing or recorded statement that may be taken out of context."); *cf. State v. Barr*, 210 P.3d 198, 206 (N.M. 2009) (noting that the primary purpose of the rule of completeness "is to eliminate misleading or deceptive impressions created by creative excerpting"), *overruled on other grounds by State v. Tollardo*, 275 P.3d 110 (N.M. 2012).

the interview transcript, nor did he cross-examine A.W. "on all of the pertinent portions" of that transcript. *Bond*, 190 A.3d at 673-74. Raboin's attorney instead explored only a few key areas while cross-examining A.W. His primary questions concerned A.W.'s age at the time of the abuse and the rooms of the family's home in which the abuse occurred. While the Majority does not explain which of counsel's questions constitute "extensive references" to the interview transcript, the Commonwealth contends that the following exchange sufficed to invoke Rule 106:

> **Q:** You mentioned that you remember going to A Child's Place for, I think they call it, a forensic interview?
>
> **A:** Yes.
>
> **Q:** Okay. Your mom took you there?
>
> **A:** Yes.
>
> **Q:** Ben was there?
>
> **A:** Yes.
>
> **Q:** All right. The detective was there?
>
> **A:** Yes.
>
> **Q:** And you indicate that, in response to [the interviewer's] questions, everything you said was the truth?
>
> **A:** Yes.
>
> **Q:** Okay. Did you tell them - and let me ask you this: As I understand, this can be uncomfortable for you. Was that a more comfortable setting than this?
>
> **A:** Yes.
>
> **Q:** They take you in a private room. Correct?
>
> **A:** There were people watching through a window.
>
> **Q:** But it's you and the interviewer are in a room, you're on a comfortable chair, that kind of thing?
>
> **A:** Yes.
>
> **Q:** Did you feel more comfortable then?
>
> **A:** Yes.
>
> **Q:** All right. That's fine. You told - do you remember the interviewer's name?

**A:**  No.

**Q:**  Did you tell him this all happened when you were eight?

**A:**  I told him kindergarten through second grade.

**Q:**  There's no doubt in your mind?

**A:**  Yes. No, there isn't.

**Q:**  There's no doubt - I'm asking bad questions. There's no doubt in your mind that's what you told him?

**A:**  No.

**Q:**  When you were in kindergarten, you were six?

**A:**  Yes.

**Q:**  Do you know how big or tall you were when you were six?

**A:**  No.

\* \* \* \*

**Q:**  Okay. And you spoke to the forensic interviewer. Did you tell him that they [(meaning the incidents of abuse)] happened each and every time because you had to go in there to go to the bathroom?

**A:**  Yes.

**Q:**  Okay. But earlier you testified that [Raboin] would call you in from the bedroom. Which is it?

**A:**  It's both.

**Q:**  Okay. So sometimes he would call you in from the bedroom, sometimes you had to go in to go to the bathroom?

**A:**  Most of the time he would call me from the bedroom. Other times he would tell my sisters to go to the bathroom and make me stay in the bedroom.

**Q:**  But sometimes you would find yourself in the shower because you had to go to the bathroom?

**A:**  Yes.

**Q:**  And you would sometimes go in there to go to the bathroom after he had done this to you a few times?

**A:**  Yes.

**Q:**  Did you tell the forensic interviewer that he would call you in from the bedroom? Did you tell him that?

**A:**  I think I did.

Notes of Testimony ("N.T."), 3/9/2018, at 67-71.

At the end of his cross-examination of A.W., defense counsel brought up the forensic interview one last time, asking: "Did you tell the forensic examiner -- I know I touched on that -- that what happened here was that [Raboin] would be in the shower, you would go in, he would say, 'Why don't you get in with me,' and that's how it would happen?" *Id.* at 79.  A.W. replied, "Yes, about half the time . . . I went in because I couldn't hold it.  I had to go to the bathroom."  *Id.* at 80.

The Commonwealth contends that the above questions "created in the minds of the jurors the suggestion that there was something about that interview that called into doubt the allegations that the victim had made from the witness stand."  Brief for Commonwealth at 27.  Thus, the Commonwealth argues, "the questioning related to the interview's content was tantamount to the introduction of the interview itself, and for that reason, Raboin cannot credibly argue that he had not introduced the forensic interview such that Rule 106 was applicable, thereby allowing the prosecution to counter the misleading impression that he had created through his cross-examination."  *Id.*

Unlike in *Bond*, defense counsel's surface-level questions here did not "introduce" A.W.'s recorded statement for purposes of Rule 106.  If the Majority is correct that counsel's references to the recording or transcript—neither of which he mentioned directly—were "extensive," then virtually every forensic interview will be admissible under the rule of completeness.  This would mean that defendants would be forced either to sacrifice their right to confront adverse witnesses; or, should they choose to engage in cross-examination, accept that a highly prejudicial recorded hearsay statement will be played for the jury.  Nothing in the text of Rule 106 (or in the Rule's commentary) suggests that it was intended to impose such a dilemma upon defendants.  Rather, "[t]he purpose of Pa.R.E. 106 is to give the adverse party an opportunity to correct a misleading

impression that may be created by the use of a part of a writing or recorded statement that may be taken out of context," Pa.R.E. 106, *cmt*, and that plainly did not happen here.

I would also conclude that the trial court's admission of A.W.'s forensic interview was not harmless beyond a reasonable doubt. Harmless error exists when: (1) the error did not prejudice the defendant or the prejudice was *de minimis*, (2) the erroneously admitted evidence was cumulative of other untainted evidence, or (3) the error could not have contributed to the guilty verdict because the admissible and uncontradicted evidence of guilt was so overwhelming that the prejudicial effect of the error was insignificant by comparison. *Commonwealth v. Petroll*, 738 A.2d 993, 1005 (Pa. 1999). Here, the Commonwealth contends that A.W.'s interview was merely cumulative of her trial testimony, in which she explained that she was afraid Raboin might hurt her or her family if she reported the abuse. Brief for Commonwealth at 39.

I am unpersuaded by the Commonwealth's argument for three reasons. First, A.W. expressed more than just a general fear of Raboin in her forensic interview. She stated that Raboin "was really mean," physically abused her mom, and would withhold food from her and her siblings when he watched them.[4] Second, the Commonwealth introduced the lengthy interview (the transcript of which is forty-two pages) on rebuttal. This means that the interview was the final evidence the jury heard before beginning deliberations, and Raboin never got a chance to rebut it. Lastly, and perhaps most importantly, the evidence of abuse in this case was not undisputed. Several defense witnesses testified that Raboin was never alone in the house with A.W., and that another adult resident or a babysitter was always present when Raboin was home. Raboin

---

[4]  *See* Forensic Interview Transcript, 7/6/2017, at 18; *id.* at 31 ("[H]e wouldn't feed us."); *id.* at 32 ("He would always push my mom, and he would hurt her, you know?  He would slap her hands and push her to the ground.").

himself similarly testified that there were always multiple adults in the home when A.W. was there.

Given these facts, the forensic interview was not merely cumulative evidence. It was, instead, a highly prejudicial recording that expanded upon A.W.'s trial testimony and served to bolster her credibility in the minds of the jurors. Indeed, the trial court specifically instructed the jury to use the interview for the purpose of assessing A.W.'s credibility.[5] And, in a he-said she-said case like this, credibility is key. Put simply, it would be impossible for an appellate court reviewing this record to conclude beyond a reasonable doubt that the interview did not influence the jury's verdict. Thus, I would vacate Raboin's judgment of sentence and remand to the trial court for further proceedings.[6]

---

[5]   *See* N.T. at 243 ("[T]he forensic interview . . . offered by the Commonwealth [is] . . . what is known as a prior consistent statement, and as such, it is to be used by you only for the purpose of helping you to determine the credibility of [A.W.] as she testified here in court.").

[6]   Unlike the Majority, I see little value in remanding this appeal to the Superior Court to consider whether A.W.'s interview was admissible as a prior consistent statement. The Commonwealth has not asked us for such a remedy, which is unsurprising given that it all but conceded that the interview was not admissible under Rule 613(c) the first time this case was before the Superior Court. *See* Commonwealth's Superior Court Brief at 18 ("[I]t would appear that Judge Rangos, as outlined in *Bond,* was not justified in admitting the video as a prior consistent statement to rehabilitate the victim."); *id.* at 10 ("The Commonwealth respectfully submits that the video was properly admitted by the trial court, if not necessarily for the specific reason offered.").