J-S34032-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INT. OF: C.A.H., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: COMMONWEALTH OF | : | |
| PENNSYLVANIA | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 677 MDA 2025 |

Appeal from the Order Entered May 20, 2025
In the Court of Common Pleas of Lycoming County Juvenile Division at
No(s):  CP-41-JV-0000010-2025

BEFORE:  STABILE, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:          **FILED: JUNE 25, 2026**

The Commonwealth appeals from the juvenile court's May 20, 2025 order denying its motion to admit out-of-court statements of a four-year-old alleged sexual assault victim under 42 Pa.C.S. § 5985.1, commonly known as the "tender years" exception to the rule precluding hearsay.  After careful review, we affirm.

A petition alleging delinquency was filed against the juvenile appellee, C.A.H., on January 15, 2025, asserting that he committed two counts of indecent assault (victim less than 13 years of age) and one count of indecent exposure.  The petition was based on statements made by his four-year-old, female niece (hereinafter "victim").[1]  The victim made the statements to her

---

[1] C.A.H. is the teenage brother of the victim's father.  **See** N.T. Hearing, 5/15/25, at 16.

grandmother, mother, and, later, to a forensic interviewer from the Children's Advocacy Center (CAC).

On April 14, 2025, the Commonwealth filed a motion to admit the victim's hearsay statements to these individuals under section 5985.1 at C.A.H's delinquency hearing. A hearing on the motion was held on May 15, 2025. The trial court summarized the evidence presented at the hearing, as follows:

> At the time of the hearing, the Commonwealth presented three witnesses, each of whom testified as to the alleged statements made by the … victim…. The Commonwealth also entered into evidence two Exhibits, one of which was a copy of the CAC interview.
>
> Sherry Moroz…, a qualified Forensic Interviewer at the CAC, testified that she interviewed the [victim] on July 8, 2024. During the interview, the [victim] stated to Moroz that the accused put his hand between the [victim's] leg[s], swiped up[,] and wiggled his fingers. The [victim] also gestured ([in an] up and down motion) how the accused had her touch his penis. Moroz stated the [victim] acted appropriately for a four-year[-old] child, [and] understood and answered the questions. Moroz further stated that she did not recall the [victim's] using language that [was] more advanced for her age. Following [the] conclusion of the hearing, this [c]ourt did review the CAC interview entered into evidence by the Commonwealth. During the [victim's] CAC interview, she disclosed that "she walked over to [the accused's] room[,"] her clothes [were] on when [the accused] wiggled on my skin[,] and that the accused got to her skin by "using his finger." As the [victim] was making the above statements[,] she was pointing to her groin area. When Moroz asked her what she called her private area, the [victim] stated her "private." When Moroz asked the [victim] what she calls a boys [*sic*] private part, the [victim] stated a "cooch." The [victim] went on to say that she did tell her mom and "Grandzy"[] that the accused told her not to tell and that what she described happened "a lot of times." On cross-examination, Moroz acknowledged that the [victim's] mother and grandmother brought her to the CAC interview.

The Commonwealth next called [M.B.]…, the [victim's] maternal grandmother. [M.B.] testified that[,] following a custody exchange and after she returned to her home with the [victim], the [victim] stated to her[,] "Gram[,] I have to tell you something. [The accused] was kissing my pee bug." [M.B.] further testified that the [victim] stated that this happened in the accused's bedroom while everyone was sleeping. [M.B.] then told the [victim's] mother, [S.D.] [M.B.] and [S.D.] then notified law enforcement and the contact with law enforcement led to the CAC interview. During the cross-examination of [M.B.], [M.B.] indicated that there currently is custody litigation involving the [victim]. [M.B.] also stated on cross[-examination] that she did not discuss the events described by the [victim] with her prior to taking the [victim] to the police station or the CAC.

The final witness called by the Commonwealth was [S.D. She] testified that on June 20, 2024[,] [M.B.] called her and said to come to [M.B.]'s house. After [S.D.'s] arrival, [M.B.] had [S.D.] ask the [victim] questions. [S.D.] testified that the [victim] was crying and upset and [said] that[,] while at her Father's home, the accused woke her up and made her do … "unacceptable things she didn't want to do." Specifically, the [victim] stated to [S.D.] that she "had to lick [the accused] and [the accused] made her return the favor." [S.D.] also testified that the [victim] described the up and down hand motion that the accused made the [victim] perform on him. [S.D.] further stated that the [victim] was told by the accused "not to tell[,"] that the [victim] was "scared to tell[,]" and that the [victim] said it happened both a million times and one time. [S.D.] testified to additional statements made by the [victim] to her[,] to include [that] "[the accused] licked my bug, made me lick him, made me do [up and down hand motion] on him, [and that the accused] was small and shriveled up." On cross-examination, [S.D.] stated that[,] although the current custody order calls for 50/50 [custody], she is not allowing the [victim] to go to her Father's home out of concern for the [victim,] but that Father may visit with the [victim] at [S.D.'s] home. [S.D.] continued by stating that she intends to file for full custody, Father has not paid child support[,] and that Father has displayed a lack of involvement in the life of the [victim].

Defense counsel called the mother of [the accused], [E.F.], to testify. [E.F.] testified that she had a conversation with [S.D.] after [E.F.] received the charges filed against [the accused]. During that conversation, [S.D.] stated to her that[,] "I know nothing happened[,] but Julius (Father of the [victim]) is going to

get in trouble and not [the accused juvenile,] and that will take care of the custody."

Juvenile Court Amended Opinion and Order (JCAOO), 5/22/25, at 1-3 (unnumbered).

Based on the testimony presented at the hearing, the juvenile court issued an order denying the Commonwealth's motion to admit the victim's out-of-court statements to M.B., S.D., and Moroz.[2,3] *See id.* at 6 (unnumbered). The Commonwealth filed a timely notice of appeal, certifying that the court's order substantially handicaps the prosecution of its case. *See* Pa.R.A.P. 311(d). Although this case was designated as a Children's Fast Track appeal pursuant to Pa.R.A.P. 102, the Commonwealth did not file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal concomitantly with its notice of appeal, as required by Pa.R.A.P. 1925(a)(2). Accordingly, on June 4, 2025, this Court issued an order directing the Commonwealth to file a concise statement within 10 days, and the Commonwealth timely complied. On June 23, 2025, the court issued an

---

[2] The court issued an "Opinion and Order" on May 20, 2025. It then issued an "Amended Opinion and Order" on May 22, 2025, adding additional language to its opinion. We utilize the date of the amended opinion and order herein.

[3] We note that in the same amended order, the court granted the Commonwealth's unopposed motion to admit testimony by contemporaneous alternative method. The court interpreted that motion as indicating that the Commonwealth intends to call the victim to testify at trial. *See id.* at 4 (unnumbered) ("Although the Commonwealth did not specifically state that the [victim] will testify, it is inferred that the [victim] will testify because the Commonwealth also filed a Motion to Permit Testimony by Contemporaneous Alternative Method and that Motion is unopposed.").

opinion indicating that it was relying on the rationale set forth in its May 20th and 25th opinions.

Herein, the Commonwealth states five issues for our review:

1. Whether the [juvenile] court erred as a matter of law and abused its discretion in denying the Commonwealth's Motion to Admit Out-of-Court Statements of the child victim pursuant to 42 Pa.C.S.[] § 5985.1, where the statements made by the four-year-old victim to forensic interviewer Sherry Moroz, maternal grandmother [M.B.], and mother [S.D.] possess sufficient indicia of reliability and particularized guarantees of trustworthiness under the totality of the circumstances, as required by **Commonwealth v. Hanawalt**, 615 A.2d 432 (Pa. Super. … 1992)?

2. Whether the [juvenile] court erred in concluding that minor variations in detail[s] between the child's multiple disclosures rendered the statements inconsistent, by improperly applying an exacting standard of verbatim repetition and failing to account for the developmental limitations and linguistic variability typical of disclosures made by a four-year-old child?

3. Whether the [juvenile] court improperly discounted the forensic interview conducted at the … []CAC[] by focusing on terminology differences rather than considering the corroborative nature of the child's gestures, body language, and consistent themes regarding inappropriate contact by the accused juvenile?

4. Whether the [juvenile] court erred by emphasizing alleged motives to fabricate on the part of the victim's mother and grandmother due to a custody dispute, without sufficient evidence to establish that any such motive tainted the child's statements or that the child was improperly influenced, thereby substituting speculation for the court's obligation to focus on the reliability of the child's own statements and conduct?

5. Whether the [juvenile] court's exclusion of the victim's statements under [section] 5985.1 severely prejudices the Commonwealth's ability to prosecute serious sexual offenses involving a child under 13 and constitutes reversible error by excluding critical, otherwise admissible evidence central to the Commonwealth's case-in-chief?

Commonwealth's Brief at 4-5.

To begin, we explain that the "tender years" exception of section 5985.1 provides as follows:

**§ 5985.1. Admissibility of certain statements**

**(a) General rule.**

(1) An out-of-court statement made by a child victim or witness, who at the time the statement was made was 16 years of age or younger, describing any of the offenses enumerated in paragraph (2) not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:

(i) the court finds, in an *in camera* hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(ii) the child either:

(A) testifies at the proceeding; or

(B) is unavailable as a witness.

42 Pa.C.S. § 5985.1(a). "Statements admitted under this section are substantive evidence against the defendant." *Commonwealth v. Copenhaver*, 316 A.3d 1020, 1023 (Pa. Super. 2024) (citing *Commonwealth v. Bond*, 190 A.3d 664, 669 n.3 (Pa. Super. 2018)). Additionally, we review the trial court's decision whether to admit or exclude evidence under the tender years statute for an abuse of discretion. *See id.* (citing *Commonwealth v. Curley*, 910 A.2d 692, 697 (Pa. Super. 2006)).

In assessing Appellant's issues, we have reviewed the parties' briefs, the certified record, and the applicable law. We have also considered the

Amended Opinion and Order authored by the Honorable Ryan C. Gardner of the Court of Common Pleas of Lycoming County. We conclude that Judge Gardner's well-reasoned analysis is supported by the record. *See* JCAOO at 3-6 (unnumbered). We do not discern any manifest unreasonableness, partiality, prejudice, bias, or ill will in Judge Gardner's decision to deny the Commonwealth's motion to admit the victim's out-of-court statements. *See also Interest of D.C.*, 263 A.3d 326, 333 (Pa. Super. 2021) (stating that an evidentiary ruling by a trial court "will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous") (citation omitted). Moreover, the Commonwealth's arguments herein fail to show that Judge Gardner clearly abused his discretion, so as to demonstrate that reversible error occurred. *Id.* (stating that where a decision "is within the sound discretion of the trial court[,]" it "will be reversed only upon a showing that the trial court clearly abused its discretion").[4] Accordingly, we adopt Judge

---

[4] Indeed, the Commonwealth's arguments are, at times, not meaningfully developed or supported by the record. For instance, in its first issue, the Commonwealth claims that "[t]he testimony of Sherry Moroz, the forensic interviewer, confirmed that the child described inappropriate sexual acts using both gestures and terms such as 'pee bug' and 'cooch.'" Commonwealth's Brief at 8 (citing N.T. Hearing at 4-14). However, at no point did Moroz offer the testimony the Commonwealth claims. The Commonwealth also contends, within that same issue, that "[e]ach adult witness testified to the child's calm demeanor and detailed disclosures[,]" yet it provides no citation to where this testimony purportedly occurred. *Id.* at 9. The Commonwealth then states that "[t]hese indicators are closely aligned with those found reliable in *Walter*, *Strafford*, and *In re D.C.*, where courts admitted statements based on

*(Footnote Continued Next Page)*

Gardner's decision as our own and affirm the order denying the Commonwealth's motion to admit the victim's out-of-court statements for the reasons set forth therein.

Order affirmed.

Judge Stabile joins this memorandum.

Judge Sullivan files a dissenting memorandum.

_____

similarly corroborative and consistent evidence." *Id.* Problematically, the Commonwealth provides no citations to these cases, or discussion of how the statements at issue therein compare to the facts at hand. In fact, the Commonwealth does not provide detailed discussions of any of the cases it cites throughout its brief.

Then, in the Commonwealth's second issue, a completely blank page of argument appears on what would be the eleventh page of its brief. In its third issue, the Commonwealth contends that "[t]he trial court's reliance on a perceived motive to fabricate stemming from a custody dispute between the victim's parents was speculative and unsupported by the record." Commonwealth's Brief at 13. However, the Commonwealth completely ignores that the court cited S.D.'s testimony regarding "her discontent with the [victim's] Father as it relates to child support, physical custody[,] and the Father's lack of involvement in the [victim's] life." JCAOO at 5. The court also stressed that "the testimony offered by [the accused's mother] supports the [c]ourt's suspicion regarding [M.B.] and [S.D.'s] motivation to blame the accused juvenile." *Id.* at 6. The Commonwealth fails to acknowledge, let alone address, this evidence which supports the court's finding that M.B. and/or S.D. had a motive to encourage the victim to fabricate her statements. These inadequacies in the Commonwealth's arguments greatly weakened its position and, ultimately, we are unconvinced that the juvenile court abused its discretion.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 06/25/2026

## IN THE COURT OF COMMON PLEAS OF LYCOMING COUNTY, PENNSYLVANIA

In Re:
C.A.H.
~~CARTER HOFFMAN,~~
a minor

: No. JV-10-2025
:
:
:

### AMEDNED OPINION and ORDER

**AND NOW**, this **21st** day of **May, 2025** this Court's Order dated May19th, 2025 is hereby AMENDED to include language following the final paragraph of the Opinion and Order: following a hearing held May 15, 2025 on the Commonwealth's Motion to Admit Out of Court Statements where the juvenile and his attorney, Michael Dinges, Esquire appeared personally and the Commonwealth was represented by Eric Birth, Esquire, the Motion is **DENIED**.

### Background and Testimony

The facts that give rise to the three counts charged in this matter (two counts of Indecent Assault and one count of Indecent Exposure) are contained in the Affidavit of Probable Cause dated December 12, 2024. Those factual allegations will not be reproduced here.

At the time of the hearing, the Commonwealth presented three witnesses, each of whom testified as to the alleged statements made by the four (4) year old child victim (VC). The Commonwealth also entered into evidence two Exhibits, one of which was a copy of the CAC interview.

Sherry Moroz (Moroz), a qualified Forensic Interviewer at the CAC, testified that she interviewed the VC on July 8, 2024. During the interview, the VC stated to Moroz that the accused put his hand between the VC's leg, swiped up and wiggled his fingers. The VC also gestured (up and down motion) how the accused had her touch his penis. Moroz stated the VC acted appropriately for a four-year child, understood and answered the questions. Moroz further

stated that she did not recall the VC using language that is more advanced for her age. Following conclusion of the hearing, this Court did review the CAC interview entered into evidence by the Commonwealth. During the VC's CAC interview, she disclosed that "she walked over to [the accused's] room", her clothes [were] on when [the accused] wiggled on my skin" and that the accused got to her skin by "using his finger." As the VC was making the above statements she was pointing to her groin area. When Moroz asked her what she called her private area, the VC stated her "private." When Moroz asked the VC what she calls a boys private part, the VC stated a "cooch." The VC went on to say that she did tell her mom and "Grandzy", that the accused told her not to tell and that what she described happened "a lot of times." On cross-examination, Moroz acknowledged that the VC's mother and grandmother brought her to the CAC interview.

The Commonwealth next called M.B. (Brown), the VC's maternal grandmother. M.B. testified that following a custody exchange and after she returned to her home with the VC, the VC stated to her "Gram I have to tell you something. [The accused] was kissing my pee bug." M.B. further testified that the VC stated that this happened in the accused's bedroom while everyone was sleeping. M.B. then told the VC's mother, S.D. M.B. and S.D. then notified law enforcement and the contact with law enforcement then led to the CAC interview. During the cross-examination of M.B., M.B. indicated that there currently is custody litigation involving the VC. M.B. also stated on cross that she did not discuss the events described by the VC with her prior to taking the child to the police station or the CAC.

The final witness called by the Commonwealth was S.D. S.D. testified that on June 20, 2024 M.B. called her and said to come to M.B.'s house. After S.D.'s arrival,

M.B. had S.D. ask the VC questions. S.D. testified that the VC was crying and upset and that while at her Father's home, the accused woke her up and made her do things "unacceptable things she didn't want to do." Specifically, the VC stated to S.D. that she "had to lick [the accused] and [the accused] made her return the favor." S.D. also testified that the VC described the up and down hand motion that the accused made the VC perform on him.

S.D. further stated that the VC was told by the accused "not to tell", that the VC was "scared to tell" and that the VC said it happened both a million times and one time. S.D. testified to additional statements made by the VC to her to include "[the accused] licked my bug, made me lick him, made me do [up and down hand motion] on him, [and that the accused] was small and shriveled up." On cross-examination, S.D. stated that although the current custody order calls for 50/50, she is not allowing the VC to go to her Father's home out of concern for the VC but that Father may visit with the VC at S.D.'s home. S.D. continued by stating that she intends to file for full custody, Father has not paid child support and that Father has displayed a lack of involvement in the life of the VC.

Defense counsel called the mother of the juvenile, E.F., to testify. E.F. testified that she had a conversation with S.D. after E.F. received the charges filed against her son. During that conversation, S.D. stated to her that "I know nothing happened but Julius (Father of the VC) is going to get in trouble and not [the accused juvenile] and that will take care of the custody."

## Analysis

Under 42 Pa.C.S.A. Section 5985.1(a):

> (1) An out-of-court statement made by a child victim or witness, who at the time the statement was made was 16 years of age or younger, describing any of the offenses enumerated in paragraph (2), [Chapter 31(relating to sexual offenses)], not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:

> (i)     the court finds, in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and
>
> (ii)     the child either;
>
>       (A) testifies at the proceeding; or
>       (B) is unavailable as a witness.

Although the Commonwealth did not specifically state that the VC will testify, it is inferred that the VC will testify because the Commonwealth also filed a Motion to Permit Testimony by Contemporaneous Alternative Method and that Motion is unopposed.

To be constitutionally valid under the Confrontation Clause, "the evidence admitted under section 5985.1 must possess 'particularized guarantees of trustworthiness' as adduced from the totality of the circumstances surrounding the out-of-court statement made by the child victim." *Commonwealth v. Hanawalt*, 615 A.2d 432, 435 (Pa. Super. 1992). The United States Supreme Court has not endorsed a mechanical test for determining when hearsay statements made by a child victim of sexual abuse "possess particularized guarantees of trustworthiness," under the Confrontation Clause. *Id* at 438. However, the Supreme Court did provide that the "main consideration in making such a determination is whether the child declarant was particularly likely to be telling the truth when the statement was made." *Id*. The Supreme Court further "identified a non-inclusive list of factors to consider when making such a determination," *Id*, to include: "(1) the spontaneity and consistent repetition of the statement(s); (2) the mental state of the declarant; (3) the use of terminology unexpected of a child of similar age; and (4) the lack of motive to fabricate." *Id*.

Arguably, the VC's statements to M.B. ▮▮▮▮ were spontaneous. However, it is difficult to ascertain the degree of spontaneity of the VC's statements to S.D. ▮▮▮▮. M.B. ▮▮▮▮ testified that she

advised [S.D.] to come to her house and question the VC regarding the statements the VC made to [M.B.]. Already armed with the information possessed by [M.B.] by the time [S.D.] arrived at [M.B.'s] home, [S.D.] then proceeded to question the VC.

Moreover, although [S.D.] provided significantly more detail regarding the statements made to her by the VC, the VC's statements to both [M.B.] and [S.D.] differ significantly from the statements later made by the VC to Moroz. Not once during the VC's interview with Moroz did the VC make any statements regarding bug, pee bug or the act of licking. The only common denominators between the statements made by the VC to [M.B.], [S.D.] and Moroz is the location of the alleged conduct committed by the accused, the up and down hand gesture made by the VC ([M.B.] did not testify that the VC described the up and down hand motion), and finally, that the VC was not to tell anyone. In short, although the VC's initial statements to [M.B.] can be considered spontaneous, the subsequent statements made by the VC lack spontaneity and consistency.

Outside of Moroz stating that the VC acted like a four-year-old and understood and answered the questions, there was no testimony received relative to the mental state of the VC or the VC's use of terminology unexpected of a child of similar age. The lack of testimony relative to these factors is neither a detriment nor a benefit to the Commonwealth or Defense.

Finally, assuming for the sake of argument that the VC's statements were both spontaneous and consistent, the testimony of both [M.B.] and [S.D.] is highly suggestive of a motive to blame the accused juvenile. Specifically, [M.B.] testified that she is aware of custody litigation between [S.D.] and the VC's Father. [S.D.] testified very specifically to her discontent with the VC's Father as it relates to child support, physical custody and the Father's lack of involvement in the VC's life. In fact, most of the testimony offered by [S.D.] regarding

her discontent of Father was unsolicited. Additionally, the testimony offered by ███[E.F.] supports the Court's suspicion regarding ███[M.B.] and ███[Dietrich][S.D.'s] motivation to blame the accused juvenile.

In sum, although it is not lost on the Court that the VC's initial statement to ███[M.B.] is arguably spontaneous, there is a lack of consistency of repetition relative to the VC's subsequent statements. Moreover, coupled with the strong possibility that ███[M.B.] and ███[S.D.] possess a motive to blame the accused juvenile, it is concluded that based on the totality of circumstances, the statements made by the VC to ███[M.B.], ███[S.D.] and Moroz do not possess the particularized guarantees of trustworthiness that the VC was telling the truth when the statements were made.

Accordingly, the Commonwealth's Motion to Admit Out of Court Statements is **DENIED** and no out of court statements shall be admitted. However, because the accused juvenile does not oppose the Commonwealth's request for testimony by contemporaneous alternative method, that Motion is **GRANTED**.

Because this decision materially effects the Commonwealth's case, this matter should be stayed pending the pursuit of an interlocutory appeal by the Commonwealth.

By The Court,

Ryan C. Gardner, Judge

RCG/kbc

cc:    DA (E.B.)
       Michael Dinges, Esq.
       APO
       Gary Weber, Esq.