J-S35027-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
          :         PENNSYLVANIA
          :
      v.           :
          :
          :
LATY JEROME ARRINGTON       :
          :
    Appellant       :   No. 456 MDA 2022

Appeal from the PCRA Order Entered February 25, 2022
In the Court of Common Pleas of Franklin County Criminal Division at
No(s): CP-28-CR-0002094-2017

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
          :         PENNSYLVANIA
          :
      v.           :
          :
          :
LATY JEROME ARRINGTON       :
          :
    Appellant       :   No. 457 MDA 2022

Appeal from the PCRA Order Entered February 25, 2022
In the Court of Common Pleas of Franklin County Criminal Division at
No(s): CP-28-CR-0001821-2017

BEFORE:   BENDER, P.J.E., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McLAUGHLIN, J.:         **FILED JANUARY 25, 2023**

      Laty Jerome Arrington appeals the denial of his Post Conviction Relief

Act ("PCRA") petition. **See** 42 Pa.C.S.A. §§ 9541-9546. He maintains that he

raised meritorious claims of ineffective assistance of counsel. We affirm.

---

[*] Former Justice specially assigned to the Superior Court.

Arrington was charged in July 2017 with drug delivery resulting in death, delivery of a controlled substance (fentanyl), and possession with intent to deliver a controlled substance (fentanyl).[1] The charges arose after a man, Dwayne Thomas, Jr., died from fentanyl and ethanol toxicity. A Pennsylvania State Police investigation revealed that Thomas had acquired the drugs from a man who, in turn, bought them from a woman named La'Neice Baker, who claimed she had bought them from Arrington. State troopers then set up a controlled buy in which Baker bought 12 packets of supposed heroin from Arrington. Troopers later learned that Baker had secreted two of the packets in her bra and only turned over 10. She kept the packets for her own use. The packets she turned over were tested and determined to contain fentanyl. **See** Trial Court Opinion, filed 5/9/19, at 2-5.

At the start of Arrington's trial, the court instructed the jury that "[s]tatements made by counsel are not evidence" and that "[i]t is the witness's answer that provides the evidence." N.T., Day 1, 1/28/19, at 13. During trial, defense counsel objected to the Commonwealth's use of an easel that it used to hold materials on which the prosecutor wrote portions of certain witnesses' testimony during its case-in-chief.

> Mr. Kulla [defense counsel]: I need to, I guess, give an objection. I can't – one, I can't see what the District Attorney keeps writing. Second, I don't think it is appropriate that he needs to write things on the board that are not – it's not the evidence. It's not as if it is evidence. The witness's testimony is the evidence. His words before –

---

[1] **See** 18 Pa.C.S.A. § 2506(a) and 35 P.S. § 780-113(a)(30).

in front of the jury is making it seem as though these things are evidence. At this point they are looking at that continuously – are able to look at that continuously.

I think the witness should be able to say what they say. It should not be – Mr. Keating's notes should not be what is utilized.

*Id.* at 53.

The court overruled counsel's objection but stated that counsel could move to be able to see what the Commonwealth was writing. The court also stated that it could "advise the jury that what [the prosecutor] is doing is for demonstrative purposes. What he is recording is not evidentiary." *Id.* at 55. Defense counsel responded that he wanted the court to give a cautionary instruction at closing argument. The "notes" from the easel were not admitted into evidence but were included as exhibits in the record. They were not given to the jury during deliberations.

During another portion of trial, defense counsel objected to the Commonwealth's questioning of a state trooper during its case-in-chief about statements made by Baker.

Q [Commonwealth]: Okay. Now, when La'Neice Baker testified before the grand jury, were you present?

A [Trooper Jeremy Holderbaum]: I was.

Q: And as far as what she told to the grand jury, was that consistent or inconsistent with what she told the jury today?

A: It was consistent.

Q: And what were the consistencies that she told?

A: Who she had purchased from. Who she had sold to.

Q: At any point in time then, did she testify during the grand jury that she had taken two bags of heroin – I'm sorry. That would [have] been before that.

During the grand jury testimony, did she give any indication of where she got that heroin from? The person.

A: Yes.

Q: And who was that?

A: It was Chris Tate.

Q: Was she still calling [Arrington] Chris Tate at that point?

A: Yes.

Q: There was some questions about whether she received heroin from other sources. Do you remember that coming up?

A: Yes.

Q: What do you recall her telling her about those other sources and what she did with that?

A: During the interview she said that she had bought from the people who she had testified about today.

Q: And did she say what she did with them?

[Defense Counsel]: Your Honor, may we approach please?

The Court: Yes

(Discussion held at sidebar.)

[Defense Counsel]: I haven't said anything yet but we're asking questions that are enlisted as hearsay. I want to object to hearsay as to what Ms. Baker said to him during interviews. She has testified already. It is inappropriate.

[Commonwealth]: **Your Honor, he has challenged the consistency of her statement. They are prior consistent statements** to show that his allegations are inconsistent with her testimony and with things that had been said previously.

> The Court: That's correct. So the objection is overruled, but we've got to move on.
>
> [Defense Counsel]: Okay. I got you.
>
> (The discussion at sidebar concluded.)
>
> The Court: **The objection is overruled.** You can answer the question.
>
> Q [Commonwealth]: Should I re-ask the question or –
>
> A [The Court]: Yes.
>
> Q [The Commonwealth]: Without getting into the detail of every word that was said in grand jury and at her interview at the preliminary hearing, comparatively speaking was it consistent or inconsistent with what she told the jury today?
>
> A [Trooper Holderbaum]: It was consistent.

N.T., Day 2, 1/29/19, at 245-47 (emphasis added).

Before closing arguments, the court advised the jury that "counsel will call to your attention the evidence that they consider material and will ask you to draw certain inferences from that evidence." N.T., Day 3, 1/30/19, at 219. However, the court also advised "keep in mind you are not bo[u]nd by counsel's recollection of the evidence. Rather it is yours and yours alone that must guide your deliberations." *Id.* Following closing arguments, the court instructed the jury that they were the "sole judges of the credibility of the witnesses and their testimony." *Id.* at 284.

The jury acquitted Arrington of drug delivery resulting in death but found him guilty of delivery of a controlled substance and possession with intent to deliver. The court sentenced Arrington to 24 to 120 months' incarceration for the delivery conviction and 96 to 192 months' incarceration for possession

with intent to deliver. We affirmed the judgment of sentence and Arrington did not seek further appellate review at that time. ***See Commonwealth v. Arrington***, Nos. 913 and 1658 MDA 2019, 236 A.3d 1136 (Pa.Super. filed April 29, 2020) (unpublished memorandum).

Arrington filed the subject PCRA petition in February 2021. The court appointed counsel who filed an amended petition. Counsel also filed multiple supplements to the original PCRA petition. Relevant to this appeal, Arrington argued that his direct appeal counsel was ineffective for failing to argue that the court erroneously admitted Baker's prior consistent statement into evidence. He also claimed that the court erred in allowing the Commonwealth to summarize testimony on the easel within the jury's view.

At a PCRA hearing, the prosecutor at Arrington's trial, Attorney Jaime Keating, explained his purpose for taking notes during trial:

> So during the trial, when each witness was called, I would put the name of the witness at the top, and I would try to put *salient points* for each one. However, there was an objection for me using an easel in this particular case. It's kind of hard to tell from the record now, but the easel would have been in the back of the Courtroom, so as not to block the jury's view of the defendant during the testimony, but in full view of Mr. Kulla [defense counsel], who would have been, and I think he was invited to come and watch what I was writing, to make sure if he see [sic] if he had an objection or not.

N.T., PCRA Evidentiary Hearing, 8/9/21, at 6 (emphasis added).

Attorney Keating stated that the easel was approximately five to 10 feet away from the jury. He also explained that "salient points" were "points that I thought were salient to the case, like their testimony and so forth." ***Id.*** at 7.

PCRA counsel then went through all the notations Keating made on the easel. Counsel discussed different portions of them where Attorney Keating marked something with a star or underlined it. Attorney Keating also explained that most of the notations related to the drug delivery resulting in death charge, for which the jury returned a verdict of not guilty. *Id.* at 41. He testified that he was "writing the facts down. I'm not writing the arguments down." *Id.* at 32. Attorney Keating also testified that he "took notes for some witnesses but not others[.]" *Id.* at 10. He also explained that the jury members took their own notes during the trial. *Id.* at 32.

Arrington's trial and appellate counsel, Attorney Stephen Kulla, also testified. He stated that regarding the failure to raise certain issues, Arrington did not request that they be raised on appeal. *See* N.T., PCRA Evidentiary Hearing, 9/20/21, at 8-9, 11. He testified that Arrington gave him six specific issues that he wanted to raise on appeal. *Id.* at 9. He also testified that beyond the issues that were raised on appeal, "I didn't see any other issues that were significant to raise on appeal[.]" *Id.* at 26. When asked whether he would have raised an issue on appeal that he believed had significant merit even if Arrington had not listed it as a desired appellate issue, Attorney Kulla replied "[u]nless he specifically directed me not to, yes." *Id.* at 26-27.

Following the hearings, Arrington filed a second amended PCRA petition that included all issues from the previously amended petition and all supplements. The court issued an opinion and order denying the petition. The court concluded that counsel was not ineffective for failing to raise the issues.

- 7 -

It determined that the easel notes were not demonstrative evidence because they were never admitted as evidence. It also maintained that as in our decision in **Commonwealth v. Ayala**, 419 A.2d 1187 (Pa.Super. 1979), the jurors here "were not able to view Attorney Keating's notes when reaching a verdict, as the notes did not enter the deliberation room." Opinion and Order of Court, filed 2/25/22, at 11. The court concluded that Attorney Keating's notations did not rise to the level of unlawfully intruding on the province on the jury. It also noted that even if the notes could constitute improper argument, Arrington failed to prove prejudice, particularly considering the not guilty verdict for drug delivery resulting in death.

Regarding counsel's failure to challenge the court's admission of Baker's prior consistent statement, the court noted that counsel did not raise the issue after being instructed by Arrington to not raise it. It also concluded that any prejudicial effect from the statement was *de minimis* and that the statement was cumulative of other evidence admitted at trial. It maintained that "[a]ny information obtained from the prior statement was repeatedly and thoroughly brought to the jury's attention through other testimony and argument." **Id.** at 24. This timely appeal followed.[2]

---

[2] Counsel filed a notice of appeal at each trial court docket, each notice listing both docket numbers. Each notice highlighted a particular docket number. Counsel later filed amended notices of appeal. These amended notices each listed a single docket number. There is no need to quash. **See** Pa.R.A.P. 902; **Commonwealth v. Young**, 265 A.3d 462, 477 (Pa. 2021) (stating appellate courts have discretion under Rule 902 to allow correction of notices of appeal

*(Footnote Continued Next Page)*

Arrington raises two issues:

1. Whether the PCRA court committed error when it rejected [Arrington's] claim that his original appellate counsel was ineffective for failing to argue, in his direct appeal, that the trial court abused its discretion when it permitted the prosecutor to take notes on an easel in full view of the jury?

2. Whether the PCRA court committed error when it rejected [Arrington's] claim that his original appellate counsel was ineffective for failing to argue, in his direct appeal, that the trial court committed error when it permitted a 'prior consistent statement' to be admitted into evidence over defense counsel's objection.

Arrington's Br. at 4 (suggested answers omitted).

Our review of the denial of PCRA relief "is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the PCRA court level." **Commonwealth v. Medina**, 92 A.3d 1210, 1214 (Pa.Super. 2014) (*en banc*) (quoting **Commonwealth v. Koehler**, 36 A.3d 121, 131 (Pa. 2012)). We are bound by any credibility determinations made by the PCRA court and supported by the record but apply a *de novo* standard of review to the PCRA court's legal conclusions. **Id.** at 1214-15.

Counsel is presumed effective. **See Commonwealth v. Paddy**, 15 A.3d 431, 442 (Pa. 2011). To overcome this presumption, the petitioner must plead

that violate Rule 341); **Commonwealth v. Johnson**, 236 A.3d 1141, 1148 (Pa.Super. 2020) (*en banc*) (concluding quashal not necessary where appellant filed appropriate number of notices of appeal, each listing multiple dockets numbers).

and prove: "(1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice because of counsel's ineffectiveness." ***Id.*** To establish prejudice, "the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's ineffectiveness." ***Id.*** at 442-43. "Failure to address any prong of the test will defeat an ineffectiveness claim." ***Commonwealth v. Williams***, 899 A.2d 1060, 1063 (Pa. 2006).

Arrington argues that direct appeal counsel erred in failing to raise a claim on direct appeal that the trial court erroneously allowed the prosecutor to write the notes in the jury's view. He argues that the prosecutor made argument to the jury by emphasizing certain notes he took by starring or underlining them. He also claims that this note taking prejudiced him by communicating to the jury what exact points of testimony it should focus on and signaled to the jury "that that particular statement or testimony was believable." Arrington's Br. at 55. He maintains that the trial court allowed the prosecutor to intrude into the province of the jury and that this "resulted in misrepresentations of important evidence because he was not writing down exactly what the witnesses were saying." ***Id.*** at 39.

In particular, he notes that during the testimony of the Commonwealth's expert in forensic pathology, Dr. Samuel Land, Attorney Keating wrote "Urine=opioids involved" and placed a star next to it. ***Id.*** at 45. He maintains

that this was an inaccurate description of the corresponding portion of Dr. Land's testimony.

"Visual aids may be used to assist the jury in understanding the evidence in appropriate cases, and permission to do so is within the sound discretion of the trial judge." ***Commonwealth v. Pelzer***, 612 A.2d 407, 412 (Pa. 1992). "An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." ***In re: Risperdal Litigation W.C. v. Janssen Pharmaceuticals, Inc.***, 174 A.3d 1110, 1117 (Pa.Super. 2017) (citation omitted). The determination of a witness's credibility lies within the province of the jury. ***See Commonwealth v. Maconeghy***, 171 A.3d 707, 712 (Pa. 2017).

Even assuming that the underlying argument had arguable merit and counsel lacked a reasonable basis for not raising it, Arrington has failed to establish the third element of an ineffectiveness claim: prejudice. The court instructed the members of the jury that they were the sole judges of credibility and that they were not bound by the attorneys' recollection of the evidence. We presume that they followed the court's instructions. ***See Commonwealth v. Naranjo***, 53 A.3d 66, 71 (Pa.Super. 2012) ("Juries are presumed to follow a court's instructions"). Moreover, we have reviewed the prosecutor's "notes" and we agree that in the main, the evidence to which they refer pertained to the drug delivery resulting in death charge, which resulted in an acquittal. Although some notes related to the drug charges for which the jury found

Arrington guilty, the evidence supporting those convictions was quite clear. We are not convinced that but for the failure to argue the issue on direct appeal, the outcome would have been different. This claim fails.

Next, Arrington claims that the PCRA court erroneously rejected his claim that direct appeal counsel was ineffective for not challenging the trial court's admission of a prior consistent statement. He argues that the prior consistent statement was admitted improperly because it was introduced during the Commonwealth's case-in-chief rather than in rebuttal. In support, he cites *Commonwealth v. Hutchinson*, 556 A.2d 370 (Pa. 1989). Arrington also takes issue with the PCRA court's explanation that even if an error occurred, his issue of ineffectiveness claim fails because "the Commonwealth's next question did not elicit a hearsay response." Arrington's Br. at 21 (quoting Opinion and Order of Court at 17).

A witness's prior consistent statement may be introduced "to corroborate or rehabilitate the testimony of a witness who has been impeached, expressly or impliedly, as having a faulty memory, or as having been induced to fabricate the testimony by improper motive or influence." *Commonwealth v. Bond*, 190 A.3d 664, 667-68 (Pa.Super. 2018) (quoting *Commonwealth v. Baker*, 963 A.2d 495, 504) (Pa.Super. 2008)); *see also* Pa.R.E. 613(c). "It is not necessary that the impeachment be direct; it may be implied, inferred, or insinuated either by cross-examination, presentation of conflicting evidence, or a combination of the two." *Bond*, 190 A.3d at 668 (quoting *Baker*, 963 A.2d at 504). Evidence of a prior consistent statement is

"admissible only in rebuttal and then only for the purpose of showing that that which the witness now testifies to has not been recently fabricated." **Hutchinson**, 556 A.2d at 372 (citation omitted). "To the extent that prior consistent statements are offered to prove the truth of the matter asserted therein, they are plainly inadmissible hearsay." **See Commonwealth v. Hunzer**, 868 A.2d 498, 512 (Pa.Super. 2005) (citation omitted). Yet if offered "to corroborate in-court testimony, prior consistent statements are not hearsay." **Id.** (citation omitted).

Here Arrington's ineffectiveness claim fails due to his failure to prove prejudice. He did not establish that but for Trooper Holderbaum's testimony regarding Baker's consistent testimony, a jury would have reached a different verdict. Additionally, his reliance on **Hutchinson** is to no avail. As the PCRA court recognized, even considering the Commonwealth's questioning of the consistency of Baker's testimony, trial counsel thoroughly cross-examined and challenged Baker's credibility. Therefore, the jury had ample evidence of Baker's consistent and inconsistent statements and was left to decide her credibility. No relief is due.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/25/2023</u>